Walter T. Gormar, J.
This action for summary proceedings was commenced by the petitioner, Lillian Portnoy, the owner and landlord of 72 Susquehanna Street, Binghamton, New York. The respondent in the action is Sandra Hill, an occupant of the Susquehanna Street premises, and referred to as the tenant. Similar proceedings have been instituted against two other tenants, Bonnie Monta and Lily Bradley, but by means of a stipulation have been consolidated with the action now before this court.
The landlord bases her action on the fact that she gave the tenant the required statutory 30-day notice (Real Property Law, § 232-b) and consequently is entitled to an order of eviction. The tenant, on the other hand, takes the position that this is merely a retaliatory tactic on' the part of the landlord to obtain her eviction for reporting alleged violations of the Housing, Property Maintenance, and Rehabilitation Code of the City of Binghamton, commonly called the Housing Code. The tenant further alleges in her answer to the petition that such retaliation is a complete defense to the landlord’s action and that she should have an opportunity to prove it at a trial. This, as far as the court can ascertain, is a case of first impression in the State of New York and thus presents a unique question. To fully comprehend the matter, it would seem best to briefly review the proceedings had heretofore involving the very same parties.
On June 21, 1968 the landlord filed a petition for summary proceedings in City Court. The basis of this petition was that the tenant had failed to pay the rent and the landlord was therefore asking for her eviction. On the return date, the tenant, through her attorney, admitted that the rent had not been paid and that she and the other two tenants were participating in a so-called “ rent strike ”. At that time she sought, through her attorney, to interpose an affirmative defense, i.e., ‘ ‘ illegality of the lease ”. The crux of this alleged defense, and what the tenant’s attorney wanted to prove at a trial was that the premises, at the time the action was commenced, as opposed to when the landlord-tenant relationship was created, were not in compliance with the Housing Code. It was his contention that both the landlord and the tenant, as parties to an illegal lease, should be left where they were found. The court was of the opinion *1099 that this would settle nothing. The tenant would be living there free and the premises would never be brought into compliance, if indeed they were not in compliance. It was further felt that the tenant had not exhausted her remedies under the Housing Code, wherein a procedure was set up for an enforcement officer to inspect the dwelling in question, and where violations were found and not corrected, substantial penalties could be imposed against the landlord until, or unless, the properties in question were brought into compliance. For these reasons, the opportunity to offer this proof at a trial was denied and the warrant of eviction was issued.
A stay of this warrant was obtained from the Broome County Court and an appeal was taken. Subsequently, on August 29, 1968 the Broome County Court affirmed the lower court’s ruling, and this ruling is now on appeal to the Appellate Division. With this background in mind we proceed.
No reported case in the State of New York could be found where the defense of retaliation was ever interposed or, in fact, offered. However, the United States Court of Appeals for the District of Columbia Circuit, in the case of Edwards v. Habib (397 F. 2d 687) did allow such a defense.
In that case, involving a similar set of facts as we have here, the court decided that the pertinent District of Columbia statutes (45 D. C. Code, § 902 and 16 D. C. Code, § 1501) were merely procedural and in no way prohibited the defense of retaliation from being used.
Judge J. Skelly Weight went on to state (pp. 699-701) that “ while the landlord may evict for any legal reason or for no reason at all, he is not, we hold, free to evict in retaliation for his tenant’s report of housing code violations to the authorities. As a matter of statutory construction and for reasons of public policy, such an eviction cannot be permitted.
* ‘ The housing and sanitary codes, especially in light of Congress’ explicit direction for their enactment, indicate a strong and pervasive congressional concern to secure for the city’s slum dwellers decent, or at least safe and sanitary, places to live. Effective implementation and enforcement of the codes obviously depend in part on private initiative in reporting of violations * * * To permit retaliatory evictions, then, would clearly frustrate the effectiveness of the housing code as a means of upgrading the quality of housing in Washington”.
It is quite clear that this court did not base its opinion on any specific statute as none was in existence. The opinion was based in part on public policy and on the court’s interpretation of Congress’ legislative intent in enacting the housing code to *1100 upgrade housing in the District of Columbia, and its further reasoning that Congress did not intend to exclude the defense of retaliation merely because they did not create a statute to cover it.
Unlike the District óf Columbia statutes, section 743 of the New York Beal Property Actions and Proceedings Law states that the answer in a summary proceeding may contain any legal or equitable defense or counterclaim. While the defense of retaliation has no basis in law it could be interposed as an equitable defense.
Binghamton City Court has no equitable jurisdiction. However, in Makas v. Makas (53 N. Y. S. 2d 375, 376) it was stated: ‘1 WMle it is true that a Justice Court or a City Court has no equitable powers, an equitable defense may be set up in any court as a shield to an action at law, and this does not give to the courts equitable authority.”
It is the court’s opinion, therefore, that the case for allowing the defense of retaliation in New York is much stronger. Not only may we rely on public policy and the need for improving and upgrading housing but it also seems quite clear that there is statutory authority for allowing it.
However, the defendants openly admit participating in a ‘‘ rent strike ”. When the petition for summary proceeding was commenced they had not paid rent for some period of time. In other words, while the proceedings have been taking place the tenants have been paying no rent at all and in effect what they are saying is — “We want the law enforced against the landlord, but not against us ”.
He who seeks equity must do equity, and he who comes into equity must come in with clean hands.
The premises having now been inspected, it is hereby ordered that when the rent is paid in full, save for that period of time that they were not found to be in compliance or for that period that the Social Services Department might have withheld it under subdivision 2 of section 143-b of the Social Services Law, a trial will be held wherein the tenant will have the opportunity of presenting the defense of retaliation.