David O. Boehm, J.
The tenant appeals from the dismissal of her affirmative defense by the Rochester City Court and the granting of a warrant of eviction and judgment in the landlord’s action to dispossess the tenant as a holdover. The tenant concedes that the required 30-day notice to vacate was duly and properly given and her answer sets forth that she has occupied the premises pursuant to an oral month-to-month tenancy since September, 1968.
This three-year period of uninterrupted and apparently acceptable occupancy becomes relevant in view of the tenant’s claim that she is being evicted in retaliation for reporting a *479 number of serious violations of the Rochester Property Conservation Code, to wit: vermin and rodent infestation; lack of heat because of the furnace’s failure to operate; peeling lead paint from walls and trim in the livingroom, kitchen and bedrooms ; flooded cellar because of a leaking pipe; windows rotted and broken through; deteriorated front steps.
Paragraphs “ 7 ” and “ 8 ” of the tenant’s answer state that she asked the landlord to remedy these hazards for a year and, because of his adamant refusal to repair, she finally was obliged to register complaints with the Rochester Building Bureau and Code enforcement divisions. After inspection, the property was cited for violations of the Property Rehabilitation and Conservation Code. Thereafter these eviction proceedings were brought.
Pending the determination of the appeal, execution of the lower court’s warrant of eviction has been stayed and the rent is being paid to the landlord’s attorney, in escrow.
The tenant’s affirmative defense is summed up in paragraph 11 of her answer: ‘ ‘ That the Petitioner is attempting to evict the Respondent from the aforementioned premises in retaliation of the Respondent’s exercise of her constitutional rights to petition her government for redress of grievances, all in violation of Respondent’s rights as guaranteed by the Constitution of the United States, Amendment I and XIV and the United States Constitution Article I, Section 8 and 9.”
‘ ‘ Retaliatory eviction ’ ’ is the nomenclature that has developed to define the action of a landlord who evicts his tenant because of the tenant’s reporting of housing code violations to the public authorities. It might have been called anything; “ vengeful eviction ” or, simply, “ getting even ”. Essentially, it comes down to the control over the property which the landlord claims to reserve to himself not only to let and relet, but to immunize it from disclosure of housing violations.
The usual position of the landlord is that he has the right to evict a holdover tenant for any reason, or, for no reason, because this is a right which the common law has created on his behalf and this right has been nurtured and protected for so many years that it has become ineluctably embedded in the law and may not be changed except by legislation.
The defense of retaliatory eviction to a holdover summary proceeding was not available at common law. However, coexisting with that historical fact, is the recurring admonition of the Court of Appeals that the common law of the State is to be kept abreast of the needs and requirements of the age. In *480 Gallagher v. St. Raymonds R. C. Church (21 N Y 2d 554, 558), the court said: “ We recognize that the common law of this State is not an anachronism hut is a living law which responds to the surging reality of changed conditions.” (See, also, Millington v. Southeastern Elevator Co., 22 N Y 2d 498, 508-509; Town of Brookhaven v. Smith, 188 N. Y. 74, 78; Greenberg v. Lorenz, 9 N Y 2d 195.)
In point of fact, the summary eviction proceeding was not available either at common law. Prior to 1820, the only legal remedy available to a landlord was an action in ejectment, a drawn-out and expensive proceeding. To enable the landlord to regain his property quickly and inexpensively, the Legislature enacted the mechanism for eviction by summary proceeding (L. 1820, ch. 194, § 3; see, also, 3 N. Y. Law of Landlord and Tenant, § 1097).
Because the summary eviction proceeding is in derogation of the common law, it must be strictly construed against the landlord (Flewwellin v. Lent, 91 App. Div. 430, 432).
The right to dispossess a holdover tenant is found in subdivision 1 of section 711 of the Beal Property Actions and Proceedings Law, which is itself subject to the provisions of sections 228, 232-a and 232-b of the Beal Property Law requiring a 30-day notice to quit as a prerequisite to such a proceeding.
The essence of the defenses available to a tenant is the right to possession of the demised premises. The defense of “ retaliatory eviction” is not, however, based on the tenant’s right to possession, per se, but rather seeks to deny possession to the landlord because of his tainted motive in evicting the tenant.
The landlord’s position is that the tenant may not assert such a defense for a number of reasons, including the necessity for prior legislative approval; lack of jurisdiction of the court to entertain the defense; and existing statutory remedies which have pre-empted any other relief. With respect to the last argument, the landlord calls attention to section 755 of the Beal Property Actions and Proceedings Law, section 143-b of the Social Services Law, section 305-a of the Multiple Besidence Law and sections 18-b and 18-c of the Civil Bights Law.
With the exception of the Civil Bights Law, the statutes cited by the landlord prohibit a landlord from evicting a tenant for nonpayment of rent if there are existing housing code violations. The Civil Bights Law is not applicable. The sole purpose of the sections cited is to make it unlawful for a publicly assisted housing accommodation to discriminate against anyone by reason of race, color, religion, national origin or ancestry.
*481 However, what the landlord overlooks is that the existing legislative scheme to protect tenants from eviction where there are existing housing violations is only operative when the tenant is being evicted for nonpayment of rent. This gap enables the landlord to waive any claim to back rent and dispossess the tenant via a holdover summary proceeding. He thereby avoids the consequences of section 755 (subd. 1, pars, [a] and [b]) of the Real Property Actions and Proceedings Law, subdivision 3 of section 305-a of the Multiple Residence Law and section 143-b of the Social Services Law.
Except for the traditional defenses to a holdover proceeding, the tenant’s position is thereby rendered hopeless. The effect of the landlord’s action is to frustrate the strong public policy of maintaining decent habitation in New York State and the policing and enforcement of such policy.
It is in the State’s as well as the tenant’s interest to recognize a defense which has the effect of penalizing a landlord for improperly attempting to side-step the law. This would presuppose, of course, that the tenant, prior to the eviction proceedings against him, had reported the housing violations, something he is similarly required to do under section 755 (subd. 1, par. [a]) of the Real Property Actions and Proceedings Law and section 305-a (subd. 3, par. a) of the Multiple Residence Law. It would, of course, also presuppose that the tenant was not himself responsible for the violations.
It is apparent that without such a defense, regardless of how it is labeled, the threat of eviction would coerce the most justifiable complaints into a submissive silence. A landlord could, with impunity, continue to rent a dwelling containing the most flagrant and reprehensible housing violations and the elaborate legislative scheme to ensure compliance with the housing laws would thus be circumvented.
As the court stated in 176 East 123rd St. Corp. v. Flores (65 Misc 2d 130, 134-135): “Section 755 of the Real Property Actions and Proceedings Law and its predecessor statutes were not designed to give tenants any new substantive rights * * * but to force landlords to comply with applicable housing laws.”
There arises also the concomitant question of whether a court should, by its decree, give legal sanction to an attempt to penalize someone for reporting a violation of the law. The question almost bespeaks the answer, particularly in light of the State’s declared public policy regarding decent, safe housing and a consideration of the alternatives available to the tenant.
*482 The trauma of eviction might he reduced somewhat if one were confident of other housing for one’s family. However, in light of the tightness of the low-income housing market, a laissez-faire indifference would have pernicious and deleterious results which would be directly contrary to the expressed state policy (see Dept. of Housing and Urban Development report, “ Analysis of the Rochester, New York, Housing Market ”, Nov. 1968; Rochester Times-Union, ‘ ‘ Substandard Housing Level Said Constant ” p. 3A, Jan 29, 1972).
To realize the important purpose behind the State’s policy on housing, one need only refer to the 1952 Report of the Joint Legislative Committee on Housing and Multiple Dwellings (McKinney’s Cons. Laws of H. Y., Book 35-B, Multiple Residence Law, p. ix) and Assemblyman Mitchell’s “ Historical Development of the Multiple Dwelling Law” written in 1946 when the old Multiple Dwelling Law was amended in its entirety (McKinney’s Cons. Laws of H. Y., Book 35-A, Multiple Dwelling Law, p. ix).
For the legislative findings, which suggested the enactment of these laws, see section 2 of both laws, as well as section 2 of the Public Housing Law and sections 11 and 11-a of the Private Housing Finance Law.
Section 90-2 of the Property Rehabilitation and Conservation Code of the City of Rochester also states the remedial purpose of such legislation: “ There exists in the City of Rochester residential, nonresidential, commercial, industrial buildings, structures or vacant areas and combinations thereof which are slum or blighted or which are becoming slum or blighted because of substandard, insanitary, deteriorated or deteriorating conditions, factors and characteristics. Their existence is injurious to the public safety, health and welfare of the people, which includes the spiritual values as well as physical, aesthetic and monetary values, and constitutes a nuisance. * * * The necessity in the public interest for the provisions hereinafter enacted is hereby declared as a matter of legislative determination.” (See, also, Rochester Building Code, art. IH, §§ 38-14, 38-16.)
The same strong legislative policy is demonstrated in the previously referred to section 305-a of the Multiple Residence Law, section 143-b of the Social Services Law and section 755 of the Real Property Actions and Proceedings Law.
Therefore, in the light of such clear public policy, the court’s process cannot be permitted to be used to penalize someone *483 for reporting a housing code violation, thereby effectively thwarting such policy.
This principle was recently reaffirmed by the Court of Appeals in Schuster v. City of New York (5 N Y 2d 75). Here plaintiff’s intestate, in response to widely published notices calling upon all private citizens to report to the police the whereabouts of Willie Sutton, furnished the information which effected Sutton’s capture. Schuster’s part in the capture became publicized and he received threats against his life, which he reported to the police. Three weeks later he was killed while approaching his home.
The issue presented to the Court of Appeals was whether a municipality is under any duty to protect a person in Schuster’s situation. The court held (pp. 80-81) that “ the public (acting in this instance through the City of New York) owes a special duty to use reasonable care for the protection of persons who have collaborated with it in the arrest or prosecution of criminals, once it reasonably appears that they are in danger due to their collaboration.”
In support, the Court of Appeals cited Matter of Quarles and Butler (158 U. S. 532), in which the "United States Supreme Court said it is the duty of government to protect a private citizen in freely exercising his right to notify the enforcement authorities of violations of law. There is a civic duty as well as a right to inform and one who does so enters into a relationship of the government’s “ agent ”.
The public policy being protected in Schuster is the policy of encouraging private citizens to aid and co-operate with the police. Indeed, not to do so in some circumstances, would be a violation of the Penal Law (Penal Law, § 195.10). The public policy involved in the case at bar, the sought-for goal of universal safe and decent housing, deserves at least as much protection as the public policy of encouraging citizens to co-operate with law enforcement officers.
A close scrutiny of the policy issues involved in both cases reveals striking similarities, especially when one considers that the office in charge of enforcing housing laws and codes is also a law enforcement agency. Unfortunately, no municipality in these times is blessed with sufficient resources to hire enough policemen or to hire enough building inspectors. In each case, they must depend upon citizen co-operation.
If law and order has any meaning, it should compensate Schuster’s estate for his co-operation; it should not allow a *484 tenant to be evicted in retaliation for reporting housing violations.
The landlord vigorously argues that this court does not have the power, without legislation, to recognize the defense raised by the tenant. In fairness to the landlord, such an argument has strong support (see dissent, Quinn, J., in Club Van Cortlandt v. Hosey, App. Term, 1st Dept., N. Y. L. J., June 11, 1970, p. 2, col. 2). And yet, the totally new remedy afforded in Schuster was, as so frequently happens, a judicial remedy, not a legislative one.
Seven States have already adopted legislation recognizing retaliatory eviction in some form as a defense. They are California (Civ. Code, § 1942.5, added by Stat. 1970, ch. 1280, p. 2316, § 5); Illinois (Rev. Stat., ch. 80, § 71); New Jersey (N. J. Stat. 2A:42-10.10-2A:42-10.12); Rhode Island (R. I. G-eneral Laws, § 34r-20-10); Maine (Rev. Stat., tit. 14, §§ 6001, 6002, as amd. 1971, ch. 322); Minnesota (Stat., § 566.03, as amd. 1971, ch. 240); Connecticut (Laws 1971, Public Act No. 852). (See, also, “ Model Residential Landlord-Tenant Code”, § 2-407, American Bar Foundation.)
Other jurisdictions have incorporated the same defense by case law. (See Edwards v. Habib, 397 F. 2d 687, cert. den. 393 U. S. 1016; Dickhut v. Norton, 45 Wis. 2d 389.) The Wisconsin court based its decision on the conclusion (p. 397) “ that public policy as espoused in ch. 66, Stats., clearly indicates that the legislature intended that housing code violations should be reported. If a landlord could terminate a tenancy solely because his tenant had reported a violation the intention of the legislature would be frustrated.”
In Schweiger v. Superior Ct. of Alameda County (3 Cal. 3d 507), at a time when the California law making retaliatory eviction a defense had not as yet become effective, the court employed the same rationale, holding that the statutory construction of California’s law regarding housing mandated the court’s recognition of the defense. “If we deny tenants a defense against retaliatory eviction in unlawful detainer actions ” the court said, “we lend the exercise of the judicial process to aid landlords in punishing those tenants with the audacity to exercise their statutory rights.” (p. 513).
Nor is this defense a new one even in New York. Our courts have already accepted the defense of retaliatory eviction in holdover eviction proceedings (Portnoy v. Hill, 57 Misc 2d 1097 [Binghamton City Ct., 1968}; Club Van Cortlandt v. Hosey, N. Y. L. J., June 11, 1970, p. 2, col. 2 [App. Term, 1st *485 Dept.] ; Stroman v. Green, N. Y. L. J., June 17, 1971, p. 19, col. 7 [App. Term, 2d Dept.]; Church v. Allen Meadows Apts., 69 Misc 2d 254).
It might be argued, although the landlord did not do so, that any decisions coming out of New York City recognizing the defense are based on subdivision b of section 51 of the New York City Rent, Eviction and Rehabilitation Regulations, prohibiting the removal of a tenant because of taking action authorized by the rent law, Multiple Dwelling Law, Administrative or Health Codes of the City of New York, or any regulation or order thereunder. However, the only case I am aware of which refers to the regulations directly is the Second Department case of McDonnell v. Sir Prize Contr. Corp. (32 A D 2d 660). Neither of the Appellate Term cases cited above rests its ruling upon the regulations. The Binghamton City Court in Portnoy v. Hill (supra), did not refer to, nor would it rely upon, New York City regulations and, most recently, the Supreme Court in Onondaga County approved the defense on pure constitutional grounds (Church v. Allen Meadows Apts., 69 Misc 2d 254, supra).
Actually, there are strong constitutional reasons compelling the acceptance of this defense as it is also intertwined with the right of every citizen to petition the government for redress of grievances (U. S. Const., Amdts. I, XIV; N. Y. Const., art. I, §§ 8 and 9). However, because this appeal may be decided on other than constitutional grounds, I do not touch upon them except to refer to the excellent discussion of these issues in the opinion of Judge Skelly Weight in Edwards v. Habib (397 F. 2d 687, cert. den. 393 U. 8.1016, supra).
Those who deem it premature, before legislative action, to countenance the defense of retaliatory eviction should direct their attention to the poised readiness of the Federal courts to act in this area (see Hosey v. Club Van Cortlandt, 299 F. Supp. 501, 506, 508, particularly the court’s reference to section 1983 of title 42 of the United States Code and the Fourteenth Amendment; Santiago v. Siegel, Civ. Action No. 71-2160, S. D. N. Y., Feb. 22, 1972; Tarver v. G. & C. Constr. Corp., Civ. Action No. 64-2945, S. D. N. Y., Nov. 9,1964).
The landlord’s reliance upon the recent United States Supreme Court decision of Lindsey v. Normet (405 U. S. 56 [Feb. 23, 1972]) is misplaced. That case does not stand for the proposition urged by the landlord. It holds that the early trial provision of the Oregon summary eviction proceeding law and the limitation imposed by that law on the litigable issues do not vio *486 not violate due process. What the landlord alludes to in that opinion is nothing more than dictum to the effect that the establishment of a right to decent housing does not assume constitutional proportions and is a legislative, not a judicial function.[1] The thrust of the Supreme Court’s decision is that the Oregon statute, being procedural only, does not involve a deprivation of constitutional rights. Judge Weight appears to have chosen the same route in Edwards v. Habib (supra).
But, the New York law is more than procedural. Section 743 of the Real Property Actions and Proceedings Law permits the tenant’s answer to contain “ any legal or equitable defense, or counterclaim,” and the cases have consistently held that such defenses or counterclaims may be interposed in summary proceedings, whether brought for nonpayment of rent or against a holdover tenant (Great Park Corp. v. Goldberger, 41 Misc 2d 988, 989; Mico Mgt. Corp. v. Scaraggi, 59 Misc 2d 984, 986).
The effect of section 743 is obvious. It makes this not a situation which depends upon legislative action, but rather one involving the court’s inherent power which, given the authority by law to accept “ any ” legal or equitable defense, may adapt itself to any such legal or equitable defense even if it does not arrive in court apparalled in the patina of age or precedent. Preliminarily, however, the question of whether City Court has equity jurisdiction in a summary proceeding should be disposed of, as the landlord has raised this issue as well.
Previous to the reorganization of the New York courts, which took effect September 1, 1962, the Legislature was prohibited by section 18 of article VI of the New York State Constitution from investing inferior courts with equity jurisdiction (see McKinney’s Cons. Laws of N. Y., Book 29A, Judiciary Law, part 3, 1966 Practice Commentary to CCA 204).
Section 15 (New York City Civ. Ct.), section 16 (District Cts.), and section 17 (City, Town and Vil. Cts.) of article VI of the State Constitution now allow these courts to “exercise such equity jurisdiction as may be provided by law ’ ’. The Legislature has enacted statutes (CCA, §§ 204, 212, 905; UCCA, §§ 212, 905; TIDCA, §§ 212, 905; TIJCA, §§ 212, 905) which confer upon each of these courts jurisdiction in summary proceedings to exercise the same jurisdiction ‘1 that the supreme court would have in like actions and proceedings ” and permits these courts to “ consider any defense to a cause of action or claim asserted by any party, whether such defense be denominated or *487 deemed legal or equitable in nature.” (See, also, Real Property Actions and Proceedings Law, § 743.)
But, even prior to 1962, it was held that the constitutional prohibition against the Legislature providing lower courts with equity jurisdiction related to affirmative jurisdiction only, and did not prohibit the Legislature from allowing defenses of an equitable character to be raised in such courts. (Alpern v. K & K Leasing Corp., 28 Misc 2d 635; Dilbert Bros. v. Foreman, 91 N. Y. S. 2d 655.)
Actually, the exercise of the equitable powers of a court to affect the landlord and tenant relationship is not new. For example, in Matter of Silver-Ruth v. Rafferty (42 Misc 2d 926), summary eviction proceedings against a superintendent were stayed on equitable grounds, and in Kramer v. Albert B. Ash-forth, Inc. (117 N. Y. S. 2d 699) tenants in an apartment building were given an injunction pendente lite to enjoin the landlord from coercing them with threatened eviction if they did not agree to a proposed co-operative ownership arrangement (see, also, 3 N. Y. Law of Landlord and Tenant, § 1181). Further, equitable considerations have always enabled a court to stay execution of a warrant or final order in a summary proceeding.
Accordingly, there is no doubt but that the Rochester City Court has the power to accommodate any equitable defense, including retaliatory eviction. This power, together with the fact that the tenant has affirmatively raised that defense in its answer which is part of the record before the court, renders spurious the argument of the landlord that this court’s limited jurisdiction as an appellate court does not permit it to “ conjure up any inherent equity defense based upon allegations extraneous to the record.”
As to equity’s role in the present case, the over-riding consideration here, as in all such cases, is that the legal right which a party has should not be manipulated to work injustice (Noyes v. Anderson, 124 N. Y. 175). Nor must equity wait for specific legislation to empower it to prevent the law from operating unjustly (Dry Dock Sav. Inst. v. Harriman Realty Corp., 150 Misc. 860, affd. 244 App. Div. 793; Home Owners’ Loan Corp. v. Wood, 164 Misc. 215, 219; 20 N. Y. Jur., Equity, § 87).
‘‘ Under some circumstances judicial discretion to grant relief becomes a judicial duty to grant it. The grace which equity should bestow then becomes a matter of right.” (20 N. Y. Jur., Equity, § 33, p. 48).
It should be stressed, however, that the exercise of a court’s equity power in a summary eviction proceeding is not in con *488 travention of the law. That ancient maxim, aequitas sequitur legem, “equity follows the law”, is still applicable, but its proportions are to be delineated in the context of the avowed statutory purpose of the housing legislation of the State and municipality. Equity, in following the law, and in the exercise of its built-in flexible power, can and should prevent the contrived destruction of the law’s purpose. (See e.g., Schweiger v. Superior Ct. of Alameda County, 3 Cal. 2d 507, 515, supra.)
This is what the tenant sought to have it do in the court below, and this is what the court should have permitted, at least by way of permissible proof.
The landlord also makes the further contention that the tenant’s pleadings are inadequate and defective. In doing so he misconstrues the mandate of the CPLR that pleadings be liberally construed (CPLR 3026). Hyper-technicality in construction may be of interest to the historian of common-law pleading but it no longer has any place in our jurisprudence. (See 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3026.01; Foley v. D’Agostino, 21 A D 2d 60.) Furthermore, the tenant’s answer properly raised the issue of retaliatory eviction and that issue was properly before the trial court.
The other points raised by the landlord are similarly without substance or merit.
Unfortunately, the matter does not rest here. I recognize the myriad problems which now confront a trial court. For example, what remedy shall it permit the tenant here if she is successful? It is precisely here that legislation, if it existed, would set forth definite remedial standards that would apply uniformly throughout the State. Unfortunately, any remedy must now be applied on a case-by-case basis that guarantees considerable diversity until, ultimately, there has emerged a pattern which all courts can follow.
Another problem which the trial court must face is the standard of proof that will be required to prove the tenant’s defense and the criteria to be employed. For example, how does one go about proving a retaliatory motive, and must it be the dominant or paramount motive, or need it be only a substantial one?
The tenant suggests that analogies may be drawn from the field of labor law. Under the National Labor Relations Act and many State laws an employer may not fire or refuse to hire an employee because of union activity. In cases arising out of a claimed violation of these laws, the courts have discussed what kind of evidence may prove an employer’s improper motive. *489 (See e.g., NLRB v. Whitin Mach. Works, 204 F. 2d 883, 885; Green Fire Brick Co. v. NLRB, 326 F. 2d 910, 916; NLRB v. Howe Scale Co., 311F. 2d 502, 505; NLRB v. Melrose Processing Co., 351 F. 2d 693, 698-699.)
These represent only some of the questions which trial courts inevitably will be called upon to develop into functional responses.
As to the remedy to be afforded, it is clear that a tenant may not remain upon the premises indefinitely solely by reason of a successful defense of retaliatory eviction. In Edwards v. Habib (397 F. 2d 687, supra), the court cautioned that even if a tenant can prove a retaliatory purpose he would not be entitled to remain in possession in perpetuity. “ If this illegal purpose is dissipated, the landlord can, in the absence of legislation or a binding contract, evict his tenants or raise their rents for economic or other legitimate reasons, or even for no reason at all.” (p. 702).
Unfortunately, Judge Weight did not set forth how or when such illegal purpose is “ dissipated ” nor did he define the outer limits of its baneful influence. Here again the trial court has been left with a principle, but without a palpable, tangible procedure.
At a minimum, however, the tenant should be permitted to remain until the landlord has made the repairs required by law. When they have been satisfactorily completed, and if the landlord still wants to evict the tenant, and if his original retaliatory motive remains unchanged, the court should be generous in allowing the tenant sufficient time, without the pressure normally exerted in a holdover eviction proceeding, to find other suitable housing.
And since the eviction proceedings would be tainted by an unlawful motive, damages should be made available to the tenant. These would be compensatory and special damages (Eten v. Luyster, 60 N. Y. 252; Burkhard v. Morris, 206 App. Div. 366; Frey Realty Co. v. Ten West 46th St. Corp., 1 Misc 2d 371), and, in a proper case, could be exemplary or punitive as well (I. H. P. Corp. v. 210 Cent. Park South Corp., 16 A D 2d 461, affd. 12 N Y 2d 329).
The remedies suggested do not call for judicial legislation. They simply call upon the courts to arrive at a result in accordance with the factual pattern of each case and the standard rules of money damages, something courts have traditionally done. Thus, courts have consistently exercised discretion as to the time when a warrant of eviction may be executed *490 (Stephens v. Carney, 188 Misc. 387). And no authority need be cited for the proposition that a court may award damages in an action where damages are available and proven.
Unfortunately, unless the Legislature acts, these admittedly incomplete standards will have to suffice until the slow hand of experience shapes new and better ones.
Judgment and order reversed, warrant of eviction vacated, and the matter remanded to Rochester City Court for further proceedings in accordance with this opinion.

. It is precisely this right which has been established by both the New York and Rochester Legislatures.