Matthew J. Vitanza, J.
The petitioner brought a proceeding to evict the respondent from premises at 44 Cleveland Avenue, Binghamton, New York. The respondent admits in her answer each and every allegation of the petition and that all papers were properly served. The petition is based upon a 30-day notice to terminate tenancy, on January 31, 1973. In her answer the respondent sets up as an affirmative defense, the defense of retaliatory eviction pursuant to section 3-A.2 of the Binghamton Housing Maintenance and Rehabilitation Code. In essence that section provides that, in case of a notice to quit the dwelling within 90 days after the tenant has availed himself of remedies against the owner, there shall be a rebuttable presumption that said notice- to the tenant is a reprisal against the tenant for making such report or complaint or for having availed himself of such remedy against the owner as provided by law.
It appears that the facts in this case are as follows: That someone called the Columbia Gas Company of New York on December 12, 1972 requesting that the furnace be checked and the meter read carefully as thére was a complaint that the bills were high and the heat was inadequate to the second floor. The proof as to who made the telephone call to the Columbia Gas Company was inconclusive. A serviceman went out on the call and found that the furnace had an illegally installed blower which took cold air from around the furnace instead of from cold air return ducts. This is a dangerous situation because of the fact that fumes from the furnace are pushed back into the apartment. His instructions in such a. situation were to shut off the furnace and tag it and to return in five days to check and see whether or not the defect had been corrected. He informed the respondent that he was going to have to turn off the furnace and she objected because she was on her way to work and "would leave her chil *386 dren without heat. The serviceman called the office and. got permission to unhook the blower and leave the furnace on as a gravity furnace. To this day the furnace has been operating in such a fashion. On December 21, 1972, a serviceman from the gas company returned to the premises and found that the blower had been removed from the furnace.
When the respondent called Mrs. Cornell and informed her that the furnace would have to be fixed in five days, she was told she would have to find another place to live in that length of timé. She was advised by her brother-in-law to call Code Enforcement and on December 20,1972 she called Code Enforcement complaining about the heat and that the gas company had shut off the blower. John L. White, an inspector for the Binghamton Housing Code went to the premises and spoke with Mr. Cornell who is husband of the petitioner. Mr. Cornell at the time was working on the first-floor apartment which was vacant. He informed the inspector that he had put insulation in to help the respondent bring down the heating bills and also had installed the blower on the furnace. He informed him also that he had been advised by the gas company to remove the blower and close up the opening to bring the furnace back to a normal gravity operation. He also informed the inspector that he intended to replace the furnace with a new baseboard heating as soon as they could vacate the second-floor apartment. The inspector also reported that there was no certificate of compliance on the second-floor apartment. He also stated that Mr. Cornell had stated to him that he would supply the tenant with an electrical heater to supplement the inadequate heat. This apparently was never done.
The only witness offered by the petitioner was Patrick Cornell, husband of the petitioner. Mr. Cornell testified that he did the maintenance work for the property at 44 Cleveland Avenue. That he is a plaster mason principally but also does work on remodeling houses, concrete work, plumbing and electric work. That he attempted to help the respondent by insulating the walls, part of which was done last year and part of which was completed about two months ago. That about two months ago he installed a blower on the furnace to help bring down the respondent’s heating bills. That he removed the blower in compliance with the gas company’s direction. That in order to have the present furnace comply with the gas company’s regulations it would be necessary to install two or three cold air returns from the cellar through the first floor apartment to the second floor. He expressed the opinion that this would take a lot of *387 work and it would be uncertain whether the respondent would get sufficient heat then. For this reason he favored the alternative of installing a hot water system which required two pipes from the basement through the first floor up to the second-floor apartment. That the decision to put in a hot water system was made after the gas company complained. Mr. Cornell further testified that the only reason why this proceeding is being brought is to gain possession of the premises for the purpose of doing the work at this time of year. That he intended to do much of the work himself and at this time of the year his work is slack as opposed to being heavy in warm weather when heat would not be required. He admitted that it was not absolutely essential that the work be done at this time. That it could be done in the summertime when heat was not required. It was his preference to do the work at this time because of the fact that he would not have the pressures of his occupation as a plaster mason. He stated that it would take two or three days of work in the apartment and seven or eight days in the cellar to install the- furnace. He also stated that he had not ordered the furnace or the pipes as yet.
In rebuttal to this testimony the respondent stated that she was willing to continue with the heating problem until warm weather and in the event that the landlord decided to install the hot water system at the present time she would be willing to put up with the inconvenience for two or three days caused by the installation in the apartment. The 30-day notice to evict this tenant of slightly more than two years was dated December 20, 1972 and served on December 28, 1972. The notice of petition and petition to recover possession of real property were dated and sworn to on February 6, 1973 and served on February 8, 1973.
The defense of the retaliatory eviction is new in this State. It was first recognized as an equitable defense in the State of New York in the City Court of Binghamton in the decision of Walter T. Gorman, City Judge in the case of Portnoy v. Hill (57 Mise 2d 1097). This case was decided on October 10, 1968 before the ordinance which established section 3-A, Remedies Against Reprisal, as part of the Binghamton Housing Maintenance and Rehabilitation Code. The latter section was added to the code on April 17, 1972 by the City Council of the City of Binghamton. There is no State statute establishing the defense of retaliatory eviction. (See Markese v. Cooper, 70 Misc 2d 478.) However, section 743 of the Real Property Actions and Proceedings Law states that the answer of the defendant may *388 contain any legal or equitable defense or counterclaim. Retaliatory eviction would be such an equitable defense (Portnoy v. Hill, supra).
Reprisal is defined in the ordinance as the institution of eviction proceedings or other legal remedies relating to the tenant’s right of possession. The ordinance further states that receipt of the notice to quit the dwelling creates a rebuttable presumption that such notice is a reprisal against the tenant for making a report or complaint to Code Enforcement.
A presumption may be defined as a rule of law “ which requires that a particular inference must be drawn from an ascertained state of facts ” (Platt v. Elias, 186 N. Y. 374, 379). The inference is mandatory once ‘ ‘ the basic facts, ’ ’ the fact which gives rise to the presumption, are established on the trial. (Model Code of Evidence, rule 701.) In this ease the respondent established that she had made a report to Code Enforcement that the furnace was not in good working condition and not providing adequate heat and that within 90 days of said report the petitioner instituted an eviction proceeding. At this point in the case she became entitled to the presumption that proceedings to evict were commenced as a retaliatory measure. Her defense of retaliatory eviction was established.
The burden of proof shifted to the petitioner to come forward with evidence and rebut the presumption. The petitioner came forward and presented the testimony of her husband who stated that the purpose for evicting the respondent was to comply with the code by installing a new hot water baseboard type heating system. That for economic reasons, since this was slack time in his work and since he intended to do much of the work himself, it was necessary to gain possession of the respondent’s apartment at this time of the year instead of waiting until summertime when no heating was necessary.
The landlord is saying here, that I desire to comply with the code, but in order to correct the defects in a manner most economical to me, I must evict the tenants. Is this sufficient evidence to rebut the presumption of retaliatory evictiop.4 This in essence is what this court must decide.
There does not appear to be any standard or precedent in the State of New York to gmide this court in its determination. The sole case which has been brought to the attention of the court which might assist it in its determination as to what constitutes sufficient evidence to rebut the presumption is the case cited in the defendant’s brief of Silberg v. Lipscomb (117 N. J. Super. 491). In that case a New Jersey court held that the land *389 lord can overcome such presumption (of retaliatory eviction) only upon a showing to the satisfaction of the court, that the decision to evict was reached independent of any consideration of the activities of the tenants protected by statute. The court held in that case that the landlord failed to reach the decision to evict independently of the activities of the tenants.
In light of that case, it would appear that in order to determine whether the petitioner’s evidence is sufficient to rebut the presumption of retaliatory eviction, this court must examine the facts of the case to determine if the landlord’s decision to evict the tenant was reached independently of the activities of his tenant protected by ordinance.
The 30-day notice in this case was dated December 20, 1972, the same day that Code Enforcement Inspector White made his inspection. The report further shows that the landlord informed Inspector "White, that he intended to replace the furnace with all new baseboard heat as soon as they, could vacate the second-floor apartment. The landlord’s decision to install new heating system was made at least as early as December 20, 1972. However, by this date the gas company had already been there and Code Enforcement was on the scene.
The only evidence of anger or annoyance submitted had taken place prior to that date, when the tenant reported the gas company’s finding to the landlord and informed her that the furnace would have to be fixed in five days. Landlord’s response was that you will have to find a new place to live in that time. The conversation indicates annoyance on the part of the landlord.
The dominant reason giving rise to this proceeding was the economic factor, that at this time of year the landlord’s husband could do much of the work himself at less cost to the landlord. Making the decision to evict the tenant, the landlord completely ignores the facts that the new heating system can be installed with the tenant in possession, and that the complete installation according to the landlord’s husband would require two or three days’ work in the apartment and seven or eight days in the cellar, a relatively short period of time. It is obvious that the landlord did not consider or refused to consider the feasibility of doing the work with the tenant in possession, even though if he had, he would have continued to receive rent while the work was being performed.
There is no question in this court’s mind that the dominant reason to evict the tenant was economic, but in all ultimate decisions more than one factor is considered and is influential in the final decision. Here the landlord had a tenant who had com *390 plained to him for three winters of the high cost of heating the apartment. When this latter fact is added to the foregoing analysis of the facts, this court is of the opinion that the landlord’s decision to evict the tenant was not independently reached from the tenant’s activities.
The landlord had failed to rebut the presumption of retaliatory eviction. The petition is dismissed.
Dismissal of this petition does not make the respondent a permanent tenant of the landlord. In the opinion of this court, once the heating system is put in a good working condition, the. defense of retaliatory eviction will no longer be available to the ' tenant. (Edwards v. Habib, 397 F. 2d 687.)
No award of damages is given to the respondent, because of the fact that this is her third winter in the apartment and she has been aware of the heating situation for the past two winters. In the opinion of this court, she knew what the heating cost would be, and, by continuing to reside in the premises, was willing to assume the payment of the same.