**Jesse GOLPHIN, Jr., Appellant,**

v.

**PARK MONROE ASSOCIATES, Appellee.**

**No. 7797.**

District of Columbia Court of Appeals.

Argued June 11, 1974.

Decided Feb. 24, 1976.

Rehearing and Rehearing en Banc Denied April 6, 1976.

Terence J. Anderson, Washington, D. C., for appellant. Edgar S. Cahn, Washington, D. C., also entered an appearance for appellant.

Herman Miller, Washington, D. C., for appellee.

Before FICKLING, GALLAGHER and NEBEKER, Associate Judges.

GALLAGHER, Associate Judge:

This is an appeal from the Landlord and Tenant Branch of the Superior Court of the District of Columbia. The appellee, Park Monroe Associates, filed suit against one of its tenants, Jesse Golphin, Jr., appellant, for possession of the apartment he occupied. The trial court granted possession to the landlord.

Appellant leased an apartment from Park Monroe Associates for a fixed term of one year. Ten days before the expiration of the term the tenant was served with a notice to vacate and quit the premises, which the tenant failed to do. A complaint was filed in the trial court with the ground for possession being asserted as the "[e]xpiration of 30 days notice to quit." During the trial, however, the court permitted the landlord to amend the complaint to assert, in effect, that possession was being sought due to the expiration of the term lease, though the notice was given shortly before the end of the term. We will view this case in the context of the permitted amendment.

At trial, the tenant offered to show that the landlord had demanded possession of the premises in retaliation against his organization of and membership in a tenant's association, as well as in retaliation against previous complaints of housing code violations made to the landlord and governmental authorities. He proffered that he received a notice to quit the day after he became president of the tenant's association. More particularly, the tenant offered to show that if he had not become active in the tenant's association, in accordance with the established policy of the landlord he would have become a month-to-month tenant at the expiration of the one-year term; and that this established policy of the landlord was in consonance with the express

terms of the lease.[1] Lastly, the tenant proffered that six suits for possession were instituted by the landlord to oust other members of the tenant's association.

The trial court declined to admit the proffered testimony as being irrelevant because the statute [2] provides that the landlord is entitled to possession immediately upon the expiration of the fixed term. Further, said the court, if there is any inconsistency between the statute and the housing regulations [3] the statute prevails.[4] Finding that the term of the lease had expired, the trial court concluded that the landlord was entitled to possession. We hold it was error to refuse to admit the testimony proffered to show a retaliatory eviction purpose by the landlord.

The question for us is whether on the facts of this case the defense of "retaliatory eviction" should have been permitted even though the tenant secured occupancy under a one-year lease, the term of which had expired.[5] For the purpose of this review we must accept the excluded proffered testimony as establishing that this suit for possession was brought for retaliatory reasons.

The controlling decision concerning "retaliatory eviction" in this jurisdiction is *Edwards v. Habib*, 130 U.S.App.D.C. 126, 397 F.2d 687 (1968), *cert. denied*, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969). The *Edwards* doctrine, we might say parenthetically, is accepted in other jurisdictions,[6] as well.

1. Paragraph 35 of the lease provides:
   HOLDING OVER TENANCY
   BY MONTH
   35. Should Tenant continue in possession of the leased premises after the end of the term herein created with permission of Landlord, it is agreed that the tenancy thus created, shall be a monthly tenancy and may be terminated by either party upon giving to the other not less than thirty days' written notice to expire on the 30th day of the month. . . . Tenant hereby waives his right to any Notice to Quit.

2. D.C.Code 1973, § 45–901.

3. Housing Regulations of the District of Columbia, 1955, § 2910. Retaliatory Acts.
   No action or proceeding to recover possession of a habitations [sic] may be brought against a tenant, nor shall an owner otherwise cause a tenant to quit a habitation involuntarily, nor demand an increase in rent from the tenant, nor decrease the services to which the tenant has been entitled, nor increase the obligations of a tenant, in retaliation against a tenant's:
   (a) Good faith complaint or report concerning housing deficiencies made to the owner or a governmental authority, directly by the tenant or through a tenant organization.
   (b) good faith organization of or membership in a tenant organization.
   (c) good faith assertion of rights under these Regulations, including rights under Sections 2901 or 2902.

4. The court stated:
   I would rest my decision on the provision of the statute [D.C.Code 1973, § 45–901].

If there be any inconsistency between statute 45–901 and the housing regulations [§ 2910], I think that the statute would prevail
and
[t]he statute [§ 45–901] states that the landlord is entitled to possession immediately upon the expiration of the term. I would hold that the term had expired and that the plaintiff is entitled to possession.

5. D.C.Code 1973, § 45–901 provides:
   When real estate is leased for a certain term no notice to quit shall be necessary, but the landlord shall be entitled to the possession, without such notice, immediately upon the expiration of the term.

6. *See, e. g., Schweiger v. Superior Court*, 3 Cal.3d 507, 90 Cal.Rptr. 729, 476 P.2d 97 (1970); *Engler v. Capital Management Corp.*, 112 N.J.Super. 445, 271 A.2d 615 (Ch.1970); *Mobil Oil Corp. v. Rubenfeld*, 77 Misc.2d 962, 357 N.Y.S.2d 589 (App.T.1974); *Toms Point Apartments v. Goudzward*, 72 Misc.2d 629, 339 N.Y.S.2d 281 (Dist.Ct. Nassau 1972); *Cornell v. Dimmick*, 73 Misc.2d 384, 342 N.Y.S.2d 275 (City Ct. Binghamton 1973); *Portnoy v. Hill*, 57 Misc.2d 1097, 294 N.Y.S. 2d 278 (City Ct. Binghamton 1968); and *Dickhut v. Norton*, 45 Wis.2d 389, 173 N.W. 2d 297 (1970). *See also McQueen v. Druker*, 438 F.2d 781 (1st Cir. 1971) (decided on constitutional grounds); *Hosey v. Club Van Cortlandt*, 299 F.Supp. 501 (S.D.N.Y.1969) (decided on constitutional grounds); *Clore v. Fredman*, 59 Ill.2d 20, 319 N.E.2d 18 (1974) (decided on an Illinois retaliatory eviction statute); *E. & E. Newman, Inc. v. Hallock*, 116 N.J.Super. 220, 281 A.2d 544 (1971) (decided on constitutional grounds);

In *Edwards v. Habib, supra*, a landlord brought a possessory action against his month-to-month tenant after serving the tenant with the statutorily required 30 days' notice to quit.[7] The tenant sought to invoke a defense of "retaliatory eviction." *Edwards* held that "proof of a retaliatory motive . . . constitute[s] a defense to an action of eviction", and remanded the case to afford the tenant the opportunity to prove that the 30 days' notice to quit was in retaliation against her reporting housing code violations to the governmental authorities.

Briefly stated, the underlying rationale of that decision is that the Housing Regulations in this jurisdiction[8] were promulgated at the explicit direction of Congress; their purpose is to secure safe and sanitary housing for the housing dwellers; effective implementation of these regulations depends in part on the private reporting of violations; though various statutes relating to landlord and tenant affairs provide that the landlord may evict for no reason at all upon proper notice, as a matter of statutory construction and for reasons of public policy this cannot be permitted if it is done in retaliation for the reporting of housing code violations to the authorities; and to permit such evictions would undercut the effectiveness of the housing code. *Edwards v. Habib, supra*, 130 U.S.App.D.C. at 138–141, 397 F.2d at 699–702. "A Congress which authorizes housing code promulgation and enforcement clearly cannot be taken to have excluded retaliatory eviction of the kind here alleged as a defense under a routine statutory eviction mechanism also provided by Congress." *Edwards v. Habib, supra* at 142, 397 F.2d at 703 (McGowan, J., concurring).

■ *Edwards* involved a month-to-month tenant whose term could be ended only after a 30 day notice. Here, we have a fixed term lease and by statute (D.C. Code 1973, § 45–901) it is provided that the landlord is entitled to possession upon the expiration of the term without a notice to quit. This statutory provision presents a refinement not before the court in *Edwards v. Habib, supra*, but on this record we think *Edwards* requires the same result. It is important to bear in mind that the tenant here proffered that if the landlord had not sought to evict him for retaliatory reasons he would have remained as a month-to-month tenant in accordance with established policy after the expiration of

*Church v. Allen Meadows Apartments*, 69 Misc.2d 254, 329 N.Y.S.2d 148 (Sup.Ct. Onondaga 1972) (decided on constitutional grounds); *Markese v. Cooper*, 70 Misc.2d 478, 333 N.Y.S.2d 63 (Monroe County Ct. 1972) (decided on public policy grounds). Some states have embodied the doctrine of *Edwards* in statutes. *See, e. g.*, Cal.Civ.Code § 1942.5 (West Supp.1975); Conn.Gen.Stat. Ann. § 19–375a (Supp.1975); Del.Code Ann. tit. 25, § 5516 (1974); Ill.Rev.Stat. ch. 80, § 71 (1973); Me.Rev.Stat.Ann. tit. 14, § 6001 (Supp.1974); Mass.Gen.Laws Ann. ch. 186, § 18 (1970); Minn.Stat.Ann. § 566.03 (Supp.1975); N.H.Rev.Stat.Ann. § 540.13–a, –13-b (1974); N.J.Stat.Ann. § 2A:42–10.10, –10.12 (Supp.1975); R.I.Gen.Laws Ann. § 34–20–10 (1970).

7. D.C.Code 1973, § 45–902. Notices to quit —Month to month.

A tenancy from month to month, or from quarter to quarter, may be terminated by a thirty days' notice in writing from the landlord to the tenant to quit, or by such a notice from the tenant to the landlord of his intention to quit, said notice to expire, in either case, on the day of the month from which such tenancy commenced to run.

8. The Housing Regulations of the District of Columbia (1955) were established and authorized by the Board of Commissioners under the predecessor of D.C.Code 1973, § 1–228. In 1967, the functions of the Board of Commissioners were transferred to the District of Columbia Council. *See Edwards v. Habib*, 130 U.S.App.D.C. 126, 139 n. 41, 397 F.2d 687, 700 n. 41 (1968).

D.C.Code 1973, § 1–228 states:
Building regulations.

The District of Columbia Council is authorized and directed to make and the Commissioner of the District of Columbia is authorized and directed to enforce such building regulations for the said District as the Council may deem advisable.

Such rules and regulations made as above provided shall have the same force and effect within the District of Columbia as if enacted by Congress.

this fixed term lease. This proffer we must accept as factual in this discussion. So we must view it as established here that notwithstanding the fixed term in the lease, appellant would have remained as a tenant but for his activities in tenant affairs and in reporting alleged housing violations.[9] This being so this case does not present just a construction of the bare statutory provisions in § 45–901 relating to fixed term tenants.

It seems to us that the crucial consideration is the essence of the law in this jurisdiction on retaliatory evictions.

At the bottom, *Edwards v. Habib* stands for the proposition that the states' *judicial processes* may not be used to accomplish an eviction for retaliatory purposes. In *Robinson v. Diamond Housing Corp.*, 150 U.S. App.D.C. 17, 463 F.2d 853 (1972), the same court stated:

> If we resolve all reasonable doubts in favor of appellant . . . it becomes plain that a jury might find Diamond Housing to be using the eviction machinery to punish Mrs. Robinson for exercising her legal rights. *Edwards squarely holds that the state's judicial processes may not be so used,* and nothing which has transpired since *Edwards* was decided has caused us to change our view. Indeed, if anything, the creation by the District of Columbia City Council of new private remedies for code violations since *Edwards* reinforces our belief in the necessity for a broad retaliatory eviction de-

fense. [(Emphasis added) (150 U.S. App.D.C. at 25–26, 463 F.2d at 861–62).]

The actuality is that, even though the tenant here had a one-year lease, prior to the expiration of the lease the landlord abandoned his established policy of allowing the tenant to continue on into a monthly tenancy and sought to utilize the "judicial processes" to evict this tenant for retaliatory reasons. As we have seen, from *Edwards*, it is the law in this jurisdiction that the judicial processes may not be so used.[10] Compare *Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 33 L. Ed.2d 570 (1972). This being so, on the facts of this case we conclude that § 45–901, which provides that a landlord is entitled to possession without notice upon the expiration of a fixed term, is not dispositive here.

It appears to us that the dissent, at its roots, fails to apply here what it terms the latter-day rule"[11] on retaliatory eviction (meaning *Edwards v. Habib, supra*). We, on the other hand, consider *Edwards* to be controlling. When it comes to "retaliatory evictions," *Edwards* does not establish a rule for short term tenants but not for long termers. It applies to all tenants, not just some.

The testimony going to the defense of retaliatory eviction should have been permitted in evidence.[12]

*Reversed and remanded for further proceedings.*

---

9. The retaliatory eviction provisions of the Housing Regulations (note 3 *supra*) apply to all actions or proceedings for possession. They are not confined to tenancies by the month, at will or at sufferance.

10. If the result were the contrary, an incidental effect would be to enable a landlord to make academic the defense of retaliatory eviction by the use of term leases incorporating a fixed term, rather than month-to-month, holdover provision.

11. While the rationale of *Edwards* was not new in concept, there is no doubt but that,

in applying the concept to the area of Landlord and Tenant law, the decision made new law, in this jurisdiction at least. As we indicated earlier, however, this new application is by no means now peculiar to this jurisdiction. *See* note 6 *supra*.

12. *See Edwards v. Habib, supra*, 130 U.S. App.D.C. at 142, 397 F.2d at 703 (McGowan, J., concurring) where it is said that having authorized the housing code Congress cannot be taken to have excluded retaliatory eviction, as here alleged, under the routine statutory provisions relating to the right to regain possession.

NEBEKER, Associate Judge (dissenting):

My dissent will be brief. My colleagues step over established legal principles of property law in their effort to extend the latter-day rule respecting ulterior motive for eviction. In taking this step, they sacrifice attributes of private ownership of property which are essential to our system. They do it at a time when there is mounting indication that the initial step in this direction exacerbates rather than alleviates substandard housing and the shortage of low and medium income rental housing. *See Edwards v. Habib,* 130 U.S.App.D.C. 126, 142–43, 397 F.2d 687, 703–04 (1968) (Danaher, J., dissenting).

In flagrant violation of the Statute of Frauds (D.C.Code 1973, § 28–3502) and D.C.Code 1973, §§ 45–807[1] and 45–901,[2] my colleagues change, or permit to be changed by extrinsic evidence, the basic nature of a fixed-term lease. They also create, without acknowledging it, a new and strange type of leasehold estate where one refuses to vacate at the expiration of the lease term. Perhaps it could be called a tenancy by trespass. Whatever it is, it is somehow unprecedently treated as superior to the "estate in possession" of the owner under D.C.Code 1973, § 45–807.

D.C.Code 1973, § 45–901 provides that the owner is entitled to immediate possession upon expiration of the fixed rental period. As of that moment the leasehold relationship between these parties expired.

Appellant could not become a tenant from month-to-month because paragraph 35 of the lease provides for this only if the tenant holds over with the landlord's permission, which was expressly withheld.

No other form of tenancy survived. *See Bell v. Westbrook,* D.C.Mun.App., 50 A.2d 264 (1947), as to a failure of an estate at sufferance to survive. As in *Bell,* the owner here also brought an immediate action for possession. An estate at will (D.C.Code 1973, § 45–822) did not survive since "the joint will of lessor and lessee" is lacking.

In applying § 2901 of the Housing Regulations, my colleagues fail to take cognizance of the fact that it proscribes retaliatory acts against a "tenant". They also fail to recognize that Chapter 1, § 1101.1 of the Regulations states that "[w]ords shall have their usual meaning unless the context clearly indicates a different meaning", and that § 1102 defines a "tenant" as one "who holds or possesses a habitation . . . with the consent of [the] owner."

Let us consider today's holding in the context of a fixed-term lease of a habitation where the lessor plans to be away from his home but plans possibly to return upon expiration of the term. If he does so or leases to another and demands possession by refusing to consent to a month-to-month holdover, the tenant may forestall his eviction for the time it takes to get a jury trial on an assertion that refusal is a retaliatory act within a proscriptive regulation. The fundamental nature of an ordinary fixed-term lease has now been changed. It is now for a time certain plus at least litigation time.

The appellant is in possession of appellee's property against its will and is nothing but a trespasser. The housing regulations do not and cannot benefit him.[3] Our holding is an unprecedented step which, in my view, we cannot and should not take.

---

1. D.C.Code 1973, § 45–807 provides:
   An estate in possession exists when the owner has an immediate right to the possession of the land.

2. D.C.Code 1973, § 45–901 provides:
   When real estate is leased for a certain term no notice to quit shall be necessary, but the landlord shall be entitled to the possession, without such notice, immediately upon the expiration of the term.

3. The same may be said for section 214(a) of D.C. Act 1–35 July 25, 1975.

The majority observes that the appellee gave advance notice to vacate at the end of the term. Since post-term notice, absent acceptance of rent for post-term occupancy, does not create a holdover leasehold (*Williams v. John F. Donohoe & Sons, Inc.,* D.C.Mun.App., 68 A.2d 239 (1949)), it would seem that our holding must be confined to cases where notice is given during the existence of the tenancy. How else, except by this dubious reasoning, can housing regulations, applicable only to landlords and tenants, be held to apply? Moreover, it also is to be expected that fixed-term lease provisions may now be modified to eliminate a month-to-month holdover provision. In such cases, it would seem that a demand for possession upon expiration of the term could not be stalled by a proffer of retaliatory motive for refusal to renew. It is to be hoped that our holding will be confined to its precise facts.

Another basis for our extension of *Edwards v. Habib, supra,* is that it must apply to long-term as well as to short-term leases. I suggest, respectfully, that this argument reveals a misunderstanding of the issue. A month-to-month tenancy is hardly short term; it is indefinite. A one-year lease is not long term; it is a definite term. When it expires, it is ended.