Andrew **HOSEY**, Plaintiff,

v.

**CLUB VAN CORTLANDT** and John J. Hallohan, Defendants.

No. 68–Civ. 4498.

United States District Court
S. D. New York.

March 24, 1969.

Harold J. Rothwax, New York City, Director, Mobilization for Youth Legal Services Unit, for plaintiff; by Lester Evens, Jonathan Weiss, and Michael B. Rosen, New York City, of counsel.

Nathaniel Borah, New York City, for defendants; by Lawrence S. Borah, New York City, of counsel.

CROAKE, District Judge.

## MEMORANDUM

Andrew Hosey, a tenant in a residential hotel, brings this action to enjoin the hotel and its manager from instituting a summary proceeding to evict him. He has placed two interesting questions before this court on a motion for a preliminary injunction. May a state court constitutionally evict a hold-over tenant when the landlord seeks the eviction in retaliation for the tenant's attempts to organize his co-tenants to complain to public officials about health and building code violations in the building? If the first question is answered in the negative, should this court enjoin this landlord from bringing a summary proceeding to evict? We answer both questions in the negative and deny the motion for a preliminary injunction.

The complaint, filed November 14, 1968, alleges that Andrew Hosey has been a week-to-week tenant in the Club Van Cortlandt for over two years. During his stay he has encouraged other tenants to try to get the landlord to make repairs necessary for their health and safety, and has filed complaints with city officials. On August 21, 1968, after a notice was circulated to the tenants, a meeting was held in plaintiff's room to discuss conditions in the building and to consider making complaints to appropriate officials. The following day plaintiff was informed by a hotel employee that his rent would be raised. On August 27, 1968 he received a letter from the hotel manager that his room had been reserved for someone else as of September 3. Plaintiff sought to have the New York Supreme Court enjoin any eviction; his motion for a temporary injunction was denied on October 18, 1968. Plaintiff did not move out and

on October 25 he received a formal notice to vacate the room by November 4 or the landlord would institute a summary proceeding to dispossess him. Plaintiff contends that the landlord wants to evict him in retaliation for the exercise of the rights of speech and assembly and the right to petition to redress grievances.

The defendants, the landlord and the hotel manager, deny all the critical allegations of the complaint except the state court decision and the seven-day notice to vacate. The manager has submitted an affidavit saying the landlord intends to institute a summary proceeding to recover possession.[1] The reason given for seeking eviction is:

> "[T]hat Mr. Hosey has been quite late with his rent payments and the landlord has had to write letters and make calls in order to collect the money due him. The landlord has had much trouble in collecting his rent on time." [2]

## I

█ Subject matter jurisdiction over this action derives from 28 U.S.C. § 1343. Injunctive relief is authorized by 42 U.S.C. § 1983 which provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The fact that the deprivation has not occurred, but is threatened, does not bar this court from providing relief.[3]

█ On a motion for a preliminary injunction, this court must weigh several factors to determine whether or not equity requires imposition of an injunction pending a full hearing and final determination of the action. Among these factors are the probability the movant will succeed on the merits, the harm that will befall the plaintiff if the motion is denied, and the harm that the defendant will suffer if it is granted.[4] On the merits, the question will be whether there is a threatened violation of a constitutional right for which there is no adequate remedy at law.[5]

## II

### CHANCE OF SUCCESS ON THE MERITS

We find that the plaintiff can prove the facts he has alleged. Copies of the several documents referred to in the complaint were attached to it. The defendants' contention that they seek an eviction because of tardiness in paying rent is unconvincing in light of the lack of specificity in the allegation of frequent late payments, the absence of threats to evict prior to the tenants' meeting, and the coincidence of the tenants' meeting and the landlord's threats to evict. We find in particular that the plaintiff will probably be able to prove that the overriding reason for the threats of eviction was retaliation against the plaintiff for his attempts to organize the tenants. The difficult question in determining the plaintiff's chance of success is the legal one: Is the plaintiff entitled to relief on the facts he has alleged?

---

1. John J. Halloran, Affidavit in Opposition, filed December 3, 1968.

2. *Id.*

3. It is well settled in equity that an anticipated violation of a right may be enjoined. An anticipated violation of a constitutional right was enjoined in Dombrowski v. Pfister, 380 U.S. 479, 85 S.

Ct. 1116, 14 L.Ed.2d 22 (1965), an action brought under 42 U.S.C. § 1983.

4. E.g., Unicon Management Corp. v. Koppers Co., 366 F.2d 199, 204–205 (2d Cir. 1966).

5. Potwora v. Dillon, 386 F.2d 74, 77 (2d Cir. 1967).

Plaintiff's argument is along these lines: His attempts to organize the tenants to file complaints with city officials about conditions in the Club Van Cortlandt were protected by the first amendment.[6] Any state action penalizing him for the exercise of these rights would be a violation of the 14th amendment; an order of a state court evicting him, and enforcement thereof, would be "state action." This court should enjoin a threatened violation of the 14th amendment under 42 U.S.C. § 1983. We will consider each step of this argument.

■■ There can be no doubt of the right of a tenant to discuss the condition of his building with his co-tenants to encourage them to use legal means to remedy improper conditions, to hold meetings, and to inform public officials of the conditions. In short, a tenant can organize the other tenants of his building to improve living conditions. He has the protection afforded by the first amendment so long as he does not interfere with the rights of other guests or the property or contract rights of the landlord.[7] Since first amendment rights have been incorporated in the 14th amendment, the state can take no action to prevent or penalize their exercise.[8]

*Prior Cases*

It may be useful to refer to several decisions dealing with retaliatory evic-

tions and injunctive relief.[9] ("Retaliation" will be used in the remainder of this memorandum to refer to any conduct intended to penalize a person for exercising a constitutional right.)

In Edwards v. Habib [10] the trial court did not permit a tenant to offer proof of a landlord's retaliatory motive in a statutory eviction action. The Court of Appeals for the District of Columbia discussed the constitutional aspects of the case because of the rules of statutory construction [11] and reached the point in its analysis of weighing the interests of the landlord against those of the tenant.[12] It decided the case on the basis of statutory construction and public policy and ruled that proof of retaliation must be heard in District of Columbia eviction actions.

The constitutionality of a retaliatory eviction was first discussed in California in Abstract Investment Co. v. Hutchinson.[13] The court had before it an appeal from a judgment for a landlord in a detainer action raising the question of the constitutionality of retaliatory eviction. Relying on Shelley v. Kraemer [14] and subsequent cases, the court held that the 14th amendment required the trial court to receive evidence on the plaintiff's motive for bringing the action. It noted further:

" * * * Certainly the interest in preserving the summary nature of an

6. Plaintiff also argues that he exercised his right to petition for redress of grievances. In re Quarles v. Buttos, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080 (1895); United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588 (1876). This approach, while appealing, has been found wanting. Edwards v. Habib, 397 F.2d 687, 696–698 (D.C. Cir. 1968), app. den., 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969).

7. Thorpe v. Housing Authority, 386 U.S. 670, 679, 87 S.Ct. 1244, 18 L.Ed.2d 394 (1967), (concurring opinion) and cases cited there; cases discussed p. 504, *infra*.

8. *Id.*

9. An earlier case holding that the 14th amendment would not be violated by a retaliatory eviction is Novick v. Levitt

& Sons, 200 Misc. 694, 108 N.Y.S.2d 615 (Sup.Ct.), aff'd mem., 279 App.Div. 617, 107 N.Y.S.2d 1016 (2d Dep't 1951).

10. 397 F.2d 687 (D.C. Cir. 1968), app. den., 393 U.S. 1016, 89 S.Ct. 618, 21 L. Ed.2d 560 (1969).

11. *Id.* n. 6 at 690.

12. The court also disposed of the 14th amendment argument based on the right to petition for redress of grievances. *Id.* at 696–698.

13. 204 Cal.App.2d 242, 22 Cal.Rptr. 309 (Dist.Ct.1962).

14. 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

action cannot outweigh the interest of doing substantial justice. To hold the preservation of the summary proceeding of paramount importance would be analogous to the 'tail wagging the dog.' "[15]

The California Supreme Court ruled on the necessity of enjoining a retaliatory eviction in Hill v. Miller.[16] Plaintiff, a month-to-month tenant, had received a notice to vacate because of his race. He sought to enjoin the landlord from evicting him, but the court sustained a demurrer. In affirming, the California court said:

"*  *  * The Fourteenth Amendment does not impose upon the state the duty to take *positive* action to prohibit a private discrimination of the nature alleged here."[17]

It distinguished *Abstract Investment* as a case which held:

"*  *  * to make available to a discriminating landlord the aid and processes of a court in effecting a discrimination would involve the state in action prohibited by the Fourteenth Amendment."[18]

It thus appears that California requires evidence of retaliation to be heard in an eviction action, but will not enjoin the retaliatory institution of an eviction action.[19]

Tarver v. G. & C. Construction Co., a case decided in this court in 1964, is nearly identical with the present case.[20] The plaintiffs there complained to the health department about their clogged toilet. In the evening of the same day they received a notice of a 400 percent rent increase and a threat of eviction if they did not pay it. Judge MacMahon granted a preliminary injunction saying that "they will probably be able to prove upon trial that they are threatened with eviction solely because they exercised their constitutional right to petition for a redress of their grievances."

It appears that the few courts which have touched on the issues of this case hold that retaliatory evictions violate the 14th amendment, but split on the question of whether they should be enjoined.

### Constitutionality of Retaliatory Evictions

The right of a landlord to pick his tenants and to refuse to renew the tenancy of a person he finds undesirable for any reason is not in issue here. We are asked to determine the extent to which a landlord can use the judicial process in effecting a retaliatory eviction.

■■ Section one of the 14th amendment prohibits the states from abridging privileges and immunities of citizens, taking life, liberty or property without due process, or denying equal protection of its laws to any person. There is no doubt today that judicial action in private disputes is a form of state action required for application of the amendment. In

15. 22 Cal.Rptr. 314.

16. 64 Cal.2d 757, 51 Cal.Rptr. 689, 415 P.2d 33, vacating, Cal., 50 Cal.Rptr. 908, 413 P.2d 852 (1966).

17. *Id.*, 51 Cal.Rptr. 690, 415 P.2d 34 (emphasis added.)

18. 51 Cal.Rptr. 690, 415 P.2d 34.

19. The constitutionality of retaliatory evictions was nearly placed before the United States Supreme Court in a case coming from California. Prendergast v. Snyder, 64 Cal.2d 877, 50 Cal.Rptr. 903, 413 P. 2d 847 (1966), involved a married couple who sought an injunction to enjoin the landlord from instituting eviction proceedings because the husband was Negro.

The trial court relied on *Abstract Investment* and granted the injunction. The California Supreme Court affirmed on the ground that the defense raised, Article I, section 26 of the California Constitution, had been declared unconstitutional in Mulkey v. Reitman, 64 Cal.2d 529, 50 Cal.Rptr. 881, 413 P.2d 825 (1966). The court found it unnecessary to discuss the 14th amendment. Both *Mulkey* and *Prendergast* were taken to the United States Supreme Court which affirmed on the basis of the unconstitutionality of section 26. Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L. Ed.2d 830 (1967).

20. 64 Civ. 2945 (S.D.N.Y. Nov. 9, 1964).

Shelley v. Kraemer [21] and Barrows v. Jackson,[22] the Supreme Court found that equal protection would be denied if a court enforced, or awarded damages for the breach of, an agreement under which property would not be sold to non-Caucasians. The application of a rule of law, such as the common law of libel applied by the lower courts in New York Times Co. v. Sullivan,[23] which penalizes a person for the exercise of a constitutional right is a violation of the 14th amendment and a court cannot award damages under it.

■ A retaliatory eviction would be judicial enforcement of private discrimination; it would require the application of a rule of law that would penalize a person for the exercise of his constitutional rights. A distinction can be drawn between a retaliatory eviction and the cases cited in that the constitutional infirmity inheres not in the agreement enforced nor in the rule of law being applied, but in the motive for which the landlord invokes state assistance. This distinction is not enough to render a retaliatory eviction constitutional.[24] Where, as in Griffin v. Maryland,[25] the

state enforces trespass laws so as to enforce a private policy of discrimination, it denies equal protection.[26] In that situation, just as here, the reason state aid is invoked gives rise to the denial of equal protection.

The effect that a rule of law permitting retaliatory evictions would have on tenants cannot be discounted. There would be no point in a tenant trying to improve conditions in a building that he would not be allowed to continue to live in.[27] Permitting retaliatory evictions would thus inhibit him in the exercise of his constitutional rights [28] or, in the words of the Supreme Court, have a chilling effect.[29]

We accordingly hold that the 14th amendment prohibits a state court from evicting a tenant when the overriding reason the landlord is seeking the eviction is to retaliate against the tenant for an exercise of his constitutional rights.[30]

### Injunctive Relief

The only legal mechanism for evicting a tenant in New York City is a special

21. 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

22. 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953).

23. 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

24. Some would argue to the contrary, saying that "state action" has lost all meaning if a plaintiff's motive is considered. Judge Wright discussed some opposing views in Edwards v. Habib, 397 F.2d 687, 690–696 (D.C.Cir. 1968). Defining the limits of state action is essentially a policy, rather than a strictly legal, determination; ample room exists for reasonable men to disagree.

25. 378 U.S. 130, 84 S.Ct. 1770, 12 L.Ed. 2d 754 (1964).

26. Peterson v. Greenville, 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963); Marsh v. Alabama, 326 U.S. 501, 66 S. Ct. 276, 90 L.Ed. 265 (1946).

27. The practical effect of permitting retaliatory evictions appears to favor slumlords. In a city with a large number of poor apartment-dwellers, a policy encouraging tenant complaints would seemingly be desirable. The state legislature has recognized the existence of the problems of the poor tenant by authorizing welfare officials to withhold rent payments being made directly to landlords if the building violates the health or building codes. Soc.Serv.L. § 143–b (McKinney's Consol.Laws, c. 55, 1966).

28. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

29. Dombrowski v. Pfister, 380 U.S. 479, 487, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

30. We do not overlook the burden that hearing proof on retaliation might place on state courts; a man's constitutional rights cannot be reduced simply to achieve judicial economy.

proceeding to recover real property,[31] usually referred to as a summary proceeding. In New York City the Civil Court has jurisdiction over such an action.[32] A summary proceeding may be brought on five specified grounds, including holding over.[33] Although a tenant may plead any "legal or equitable defense" in his answer,[34] the plaintiff contends that the landlord-tenant part of the Civil Court will not permit the defense of retaliation to be raised.

The law is unsettled in New York whether retaliation is a defense to a holdover proceeding. A 1967 decision of the New York City Civil Court, in a summary proceeding brought by the New York City Housing Authority, holds that the ground upon which the Authority decided to terminate the tenancy was irrelevant.[35] More recently, the court held specifically that the defense of retaliation could not be raised.[36] On the other hand, the City Court of Birmingham permitted the defense to be raised in a summary proceeding.[37] In an action by this plaintiff to have the New York Supreme Court enjoin the currently threatened eviction, Justice Saul Streit denied a temporary injunction because "[in a summary proceeding] plaintiff can urge any lawful grounds to prevent his eviction."[38]

■■ If we were to find that New York had settled this question against raising the defense, we would be inclined to issue an injunction under 42 U.S.C. 1983.[39] Since it has not settled the question, the threat of a constitutional violation is not sufficiently strong to require us to interfere with the orderly progress of the case through the state courts.[40]

The plaintiff argues that even should the New York courts permit the defense to be raised, we should issue an injunction because of the chilling effect that the threat of litigation would have on tenant organizers. To accept his argument would be to substitute the federal courts for the state courts in all similar proceedings since the federal court would have to try the case to determine the landlord's motive. The situation here is thus different from the one in Dombrowski v. Pfister.[41]

We accordingly find that, although a retaliatory eviction would violate the 14th amendment, it is not clear that a violation is threatened in this case. We

---

31. Real Property Actions and Proceedings Law § 711 (McKinney's Consol.Laws, c. 81, 1963).

32. R.P.A.P.L. § 701 (McKinney 1963); CPLR § 204 (McKinney 1963).

33. R.P.A.P.L. § 711 (McKinney 1963).

34. R.P.A.P.L. § 743 (McKinney Supp. 1968).

35. New York City Housing Authority v. Gantt, 57 Misc.2d 447, 292 N.Y.S.2d 759, 762 (N.Y.City Civ.Ct.1967).

36. Lincoln Square Apartments v. Davis, 58 Misc.2d 292, 295 N.Y.S.2d 358 (N.Y. City Civ.Ct. Dec. 3, 1968).

37. Portnoy v. Hill, 57 Misc.2d 1097, 294 N.Y.S.2d 278 (City Ct. of Birmingham, Oct. 10, 1968).

38. Hosey v. Club Van Cortlandt, No. 13926–1968 (Sup.Ct., N.Y.County, Oct. 18, 1968).

39. We would not be persuaded by the reasoning of the California Supreme Court in Hill v. Miller, see p. 505, *supra*, since the question before a federal court would be whether the threatened state action would violate the constitution, not whether the constitution required that the court take action to prevent the violation.
   Enjoining the institution of a summary proceeding would not be barred by 28 U.S.C. § 2283. Dombrowski v. Pfister, 380 U.S. 479 n. 2 at 484, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

40. See Dombrowski v. Pfister, 380 U.S. 479, 482–485, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

41. 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed. 2d 22 (1965).

therefore find that the plaintiff will not succeed on the merits.[42]

## III

### HARM TO THE PARTIES PENDING FINAL DISPOSITION

■ Assuming that the plaintiff has been tardy in tendering his rent, the financial loss resulting from late payments on one room in a residential hotel would not be significant. Any "harm" coming to the landlord because of the plaintiff's exercise of his constitutional rights is not harm cognizable by this court. We accordingly find that the landlord would not be seriously harmed if the preliminary injunction were granted.

If the Landlord-Tenant Part of Civil Court does not allow the defense of retaliation to be raised in the summary proceeding that has been threatened, the plaintiff will have recourse to higher courts to see if either New York statutes or the Federal Constitution require that proof on the defense be heard. The judgment will automatically be stayed pending appeal.[43] Accordingly, the plaintiff will not be harmed if his motion for a preliminary injunction is denied.

## IV

### FINDINGS AND CONCLUSIONS

The following findings and conclusions flow from this discussion:

1) The plaintiff has a reasonably good chance of proving the facts alleged at trial.

2) An eviction ordered by a state court in an action begun to retaliate against a tenant for exercising his rights of speech and assembly to remedy building and health code violations in his building would be a violation of the 14th amendment.

3) Although the landlord in this case threatens to institute a summary proceeding to dispossess, there is no clear danger that a violation of the 14th amendment will occur since it is unsettled whether the New York courts will entertain a defense of retaliation for the exercise of constitutional rights.

4) Plaintiff therefore is not entitled to a permanent injunction as a matter of law.

5) Issuance or refusal to issue a preliminary injunction would cause no significant harm to the plaintiff or the defendants pending a final disposition of this action.

6) Accordingly, the motion for a preliminary injunction must be denied.

So ordered.

---

42. This conclusion could also have been reached on the basis of the adequacy of the appellate procedure as a remedy. DeVasto v. Hoyt, 101 F.Supp. 908, 910 (S.D.N.Y.1951).

43. CPLR § 5519(a) (McKinney 1963); Oleck v. Pearlman, 49 Misc.2d 202, 267 N.Y.S.2d 76 (Sup.Ct.1966). See Pisano v. Nassau County, 41 Misc.2d 844, 246 N.Y.S.2d 733, 736 (Sup.Ct.1962), aff'd mem., 21 A.D.2d 754, 252 N.Y.S.2d 22 (2d Dep't 1964).