**David L. FALLIS et al., Plaintiffs,**

**v.**

**Roger G. DUNBAR et al., Defendants.**

**Civ. No. C 74–445.**

United States District Court,
N. D. Ohio, W. D.

Dec. 4, 1974.

**1118**

John A. Harris, III, Toledo, Ohio, Russell A. Kelm, Columbus, Ohio, for plaintiffs.

Theodore M. Rowen, Charles Sliter, Toledo, Ohio, for defendants.

## OPINION AND ORDER

DON J. YOUNG, District Judge:

This action was commenced by plaintiffs as a civil rights class action. Plaintiffs filed a motion for a preliminary injunction, which was heard in an extended hearing covering parts of several days. The defendants filed a motion to dismiss for lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted.

The evidence offered at the preliminary injunction hearing showed that plaintiffs were tenants in the Glendale Village, a complex of apartments and townhouses in which they had rented a townhouse some time before the commencement of this action. Defendants were a group of interlocking corporations and their employees, who owned and operated Glendale Village and other rental properties with a total of nearly one thousand dwelling units. Glendale Village consists of one hundred ninety-two units in ten buildings.

Plaintiffs David L. Fallis and Nancy J. Fallis leased a townhouse from the defendants in August, 1972. The lease was for a term of one year, at a stated monthly rental. Although the lease itself contained no provisions relating to renewal, it is claimed that at least some lessees were told before executing their leases that the leases would automatically renew for a like term of one year if no notice of termination was given. Defendants considered that tenants holding over the term of the original lease would hold over on a month to month basis.

In the summer of 1973, defendants sent notice of rent increases to all the tenants in Glendale Village, stating that increased expenses of operation and maintenance made this necessary. This

incensed the tenants, who felt that the defendants maintained the complex very badly, neglecting to care for the lawns and plantings, to keep the swimming pool in usable condition, and to do necessary interior repairs and maintenance.

Plaintiff Glendale Tenants Association was organized to protest these matters, and at its peak had a membership representing about seventy units. Plaintiffs Fallis were active in organizing the association, and ultimately took control of it.

The association negotiated with the defendants, with some degree of success. However, defendants at various times commenced or threatened eviction actions against some of the most contentious members of the Tenants Association, and ultimately commenced an eviction action in the Toledo Municipal Court against plaintiffs Fallis. The motion for a preliminary injunction seeks primarily to restrain the defendants from prosecuting this eviction action.

Plaintiffs Fallis claim that they are holding under a renewal of their original one-year lease, and not tenants from month to month, and that in any event the eviction action is in retaliation for their activities in the Tenants Association. They also claim that eviction would result in irreparable injury to them, because, among other things, their children attend a particularly fine and progressive school, which they might have to leave if the plaintiffs Fallis were evicted.

Defendants, on the other hand, piously disclaim any retaliatory eviction, and cite various wrongful activities of the plaintiffs Fallis, such as carrying on a retail clothing business in their townhouse, in violation of the rental terms and the zoning laws; their withholding part of their rental payments; their watering the lawns around their townhouse excessively, and to the inconvenience of the residents in the adjoining units; and operating their phonograph at excessively high volume.

The evidence left no doubt in the Court's mind that while the plaintiffs Fallis had definitely violated the terms of their rental agreement with the defendants, the defendants' eviction action was definitely retaliatory. Had the plaintiffs Fallis been less obdurate in insisting upon their rights without regard to the rights of others, the defendants would not have filed the action of forcible entry and detainer.

The question of granting a preliminary injunction always involves a balancing of the equities. While it is clear that the plaintiffs Fallis would probably suffer more from a refusal of the injunction than the defendants would from a granting of it, that is not the whole of the problem. The major question is the likelihood of the plaintiffs ultimately succeeding in obtaining a final judgment granting permanent relief. For reasons that will be discussed in detail below, there is no real likelihood of plaintiffs being successful in this action. The motion for a preliminary injunction is overruled.

Coming now to consider the motion to dismiss the action filed by the defendants, it is clear that the matters in dispute are not generally within the Court's jurisdiction. Plaintiffs claim that the Court has jurisdiction of the matter as an action arising out of a deprivation of civil rights under 42 U.S.C. §§ 1983 and 1985(3).

The essential elements for stating a claim under 42 U.S.C. § 1983 are:

(1) the plaintiff must prove that the defendant has deprived him of a right secured by the Constitution and laws of the United States and

(2) the plaintiff must show that the defendant deprived him of his constitutional rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory."

This second element requires plaintiff to show that the defendant acted under color of state law. Adickes v. S. H. Kress

& Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). It is upon the second element that plaintiffs' cause of action under § 1983 founders.

It is clear that defendants' action of eviction is possible only by utilizing the power of the State of Ohio in a proceeding in forcible entry and detainer under Chapter 1923 of the Ohio Revised Code. The key issue is whether the resort to the courts of law by a private person is action under color of state law for the purposes of § 1983.

Plaintiffs argue that the opinions in Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) and Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953) and also New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) compel the conclusion that the application of state common law and case law by state courts in suits between private persons constitutes state action under § 1983. They cite the cases of Hosey v. Club Van Cortlandt Park, 299 F.Supp. 501 (S.D.N.Y.1969) and Edwards v. Habib, 130 U.S.App.D.C. 126, 397 F.2d 687 (1968), cert. denied, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969) to support their position.[1] In *Hosey,* the court found that retaliatory eviction would be judicial enforcement of private discrimination, penalizing a person for the exercise of constitutional rights and thus constituted state action under the Fourteenth Amendment.[2] *Edwards,* however, was decided on statutory rather than constitutional grounds, and thus does not aid the present analysis.

■ The Court concludes that the rule of Shelley v. Kraemer, *supra,* does not extend to the degree urged by the plaintiffs. As a general principle, the filing of a suit between private parties in state court is not state action. Henry v. First National Bank, 444 F.2d 1300 (5th Cir. 1971), cert. denied, 405 U.S. 1019, 92 S.Ct. 1284, 31 L.Ed.2d 483 (1972); Stevens v. Frick, 372 F.2d 378 (2nd Cir. 1967). More specifically, some courts have found that institution of eviction proceedings by a landlord is not action under color of state law within § 1983. Weigand v. Afton View Apartments, 473 F.2d 545, 548 (8th Cir. 1973); Lavoie v. Bigwood, 457 F.2d 7, 10–14 (1st Cir. 1972); McGuane v. Chenango Court, Inc., 431 F.2d 1189, 1190 (2d Cir. 1970), cert. denied, 401 U.S. 994, 91 S.Ct. 1238, 28 L.Ed.2d 532 (1971); Mullarkey v. Borglum, 323 F. Supp. 1218, 1225–1227 (S.D.N.Y.1970).

■■ The Court is compelled to reject plaintiffs' argument concerning the extent of the Shelley v. Kraemer rationale. First, Shelley v. Kraemer required the state court to find that the prospective buyer was black and that the restrictive covenant being enforced was racially restrictive. The parties necessarily made the state court privy to the discriminatory purpose. No such compelling facts exist in the present case, as the Ohio eviction procedure merely affords the landlord a method of vindicating his property rights without inquiring into his motive for bringing the suit.[3] A second reason for limiting the Shelley v. Kraemer rule is the danger

---

1. Plaintiffs also cited the decisions of three other cases, but since they are unreported and the plaintiffs did not furnish the Court with copies of the opinions, the citation of those cases does not assist the Court in its determination of the issues herein.

2. *Hosey* is of doubtful precedential value as different results were reached in a subsequent decision of the Court of Appeals for the Second Circuit and also in another case in the same court. McGuane v. Chenango Court, Inc., *infra,* and Mullarkey v. Borglum, *infra.*

3. Plaintiffs have made much of the Ohio case law which states that in an action for forci-

ble entry and detainer the motives of the landlord are irrelevant, thus leaving the landlord free to evict for unconstitutional reasons. That argument may be true as to the particular plaintiffs, but for any eviction action filed after November 4, 1974, a defense of retaliatory eviction now exists in Ohio by statute. § 5321.02(A), Ohio Rev. Code. It is an open question whether that statute can be utilized by plaintiffs in the state court action, depending upon whether the state court construes the statute as remedial or not. *See* § 1.20, Ohio Rev.Code; 50 O.Jur.2d Statutes § 121–32 (1961).

which the use of that doctrine poses as a precedent. A logical extension of the doctrine would result in a federal cause of action existing whenever any state police power is used by private persons where constitutionally protected rights are involved. It could logically apply where a proprietor seeks to remove with police assistance a person from his private property because of what the person is saying. Such an extension has so great an application to purely private actions as to be overbroad. The Court therefore finds that filing an eviction action in state court is not action by the defendant under color of state law within § 1983 and plaintiffs have thus failed to state a claim upon which relief can be granted under § 1983.

Plaintiffs also allege in the complaint that a cause of action exists under 42 U.S.C. § 1985(3). At the hearing in this matter, counsel for plaintiffs seemed to abandon any claim under § 1985(3). In their brief opposing the motion to dismiss filed after the hearing on a preliminary injunction, plaintiffs made no mention of § 1985(3). It would appear that plaintiffs have forsaken any claim of conspiracy. The Court will nonetheless examine the present case under § 1985 principles.

■ Unlike an action under § 1983, an action under § 1985(3) reaches purely private actions without any requirement of state action. Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The elements for a cause of action under § 1985(3) are:

(1) existence of a conspiracy of two or more persons;

(2) the purpose of the conspiracy is to deprive a person or class of persons of equal protection of laws or privileges and immunities under the laws;

(3) an act in furtherance of the conspiracy; and

(4) injury or deprivation of the rights of plaintiff.

Cameron v. Brock, 473 F.2d 608, 610 (6th Cir. 1973).

A serious question exists whether there were two or more persons who conspired to deprive the plaintiffs of their civil rights. The complaint names as defendants Roger D. Dunbar, Ronald W. Chapman, R. G. Dunbar, Inc. and Dunbar Real Estate Co. The complaint alleges, and the evidence presented at the hearing showed, that Roger G. Dunbar and Ronald Chapman are officers and agents of R. G. Dunbar, Inc. and Dunbar Real Estate Co. It is also clear from the evidence at the hearing that the management of Glendale Village is carried out solely and exclusively by Dunbar Real Estate Co. No evidence of any nature was introduced to show that R. G. Dunbar, Inc. was involved in any manner in any of the actions or decisions affecting either the plaintiffs or the Glendale Tenants Association.

■ Given the fact that only Dunbar Real Estate Co. and its officers, employees and agents were involved in the actions complained of. the Court finds that there were not "two or more persons" who conspired to deprive plaintiffs of any civil rights. A corporation exists as a person only in a legal sense; it can act and speak only through its officers, employees, and agents. The action of Roger Dunbar in deciding to evict plaintiffs and the actions of other employees and agents in carrying out that decision were within the scope of their employment by Dunbar Real Estate Co. As such, the conspiracy requirement of § 1985(3) has not been met. See Dombrowski v. Dowling, 459 F.2d 190, 193 (7th Cir. 1972). See also Pearson v. Youngstown Sheet & Tube Co., 332 F.2d 439, 442 (7th Cir. 1964) (interference with contract action); Zelinger v. Uvalde Rock Asphalt Co., 316 F.2d 47, 52 (10th Cir. 1963) (interference with contract action); Nelson Radio & Supply Co. v. Motorola, 200 F.2d 911, 914 (5th Cir. 1952), cert. denied, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953) (§ 1 of Sherman Act).

Based upon plaintiffs' abandonment and the Court's conclusion of the failure to show a conspiracy of two or more

persons, the motion to dismiss as to § 1985(3) must be granted.

This opinion will serve as the Court's findings of fact and conclusions of law. An order will be entered in accordance therewith, denying plaintiffs' motion for a preliminary injunction, granting the defendants' motion, and dismissing the action.