In re LOUDOUN PLUMBING & HEATING, INC., Debtor.

Linwood W. MAGINNISS, Richard E. Ray, Plaintiffs,

v.

George S. McKENZIE, Kathleen McKenzie, William H. McKenzie, Theresa M. McKenzie, G. W. Bozievich Plumbing & Heating, Inc. and Gary W. Bozievich, Defendants.

Bankruptcy No. 80–00832.
Adv. No. 80–0103.

United States Bankruptcy Court,
E. D. Virginia,
Alexandria Division.

Aug. 6, 1981.

Royce Lee Givens, Jr., Leesburg, Va., and Q. Russell Hatchl, Washington, D. C., for plaintiffs.

J. Patrick McConnell, Odin, Feldman & Pittleman, P. C., Herndon, Va., for defendants.

Robert O. Tyler, Trustee in Bankruptcy.

## MEMORANDUM OPINION

MARTIN V. B. BOSTETTER, Jr., Bankruptcy Judge.

This matter came on for trial on the Complaint of the plaintiffs, Linwood W. Maginniss and Richard E. Ray, against George McKenzie, a director and president of Loudoun Plumbing & Heating, Inc. ("LP&H") and other named defendants. In Count 1 of their Complaint the plaintiffs allege that George McKenzie, his wife Kathleen McKenzie (a part-time employee of LP&H), his mother, Theresa McKenzie (a bookkeeper for LP&H) and his father, William McKenzie (a director and secretary-treasurer of LP&H) negligently and/or fraudulently induced the plaintiffs to sign a $50,000.00 purchase-money note as guarantors on or about July 25, 1979. The plaintiffs allege in Count 2 that George McKenzie negligently and/or fraudulently dissipated the assets of LP&H, in part by his failure to deal with corporate assets as corporate property and not his own and further failed to maintain adequate corporate records.

As against William McKenzie, the plaintiffs allege in Count 6 that he negligently and/or fraudulently failed to apprise them of the irregularities he observed in the operation of LP&H, in part by his failure to maintain adequate corporate records.

The plaintiffs allege in Count 7 that Kathleen McKenzie wrongfully received cash from LP&H bank accounts as the payee of LP&H checks written by George McKenzie.

In Count 8, the plaintiffs allege that Theresa McKenzie and Kathleen McKenzie negligently and/or fraudulently failed to apprise them of the irregularities they observed in the operation of LP&H.

The facts, as stipulated to by the parties, are as follows:

The plaintiff, Linwood W. Maginniss is a licensed real estate broker serving as president of L. W. Maginniss Properties, Incorporated. Maginniss is a director of LP&H and owns ten percent of the outstanding capital stock of the corporation. The plaintiff Richard E. Ray, is a resource manager for the Naval Intelligence Command, and is employed as a part-time real estate salesman with Maginniss' firm. Ray is also a director of LP&H and owns ten percent of the stock of LP&H.

In the spring of 1979, the defendant, George McKenzie contacted one Gary Wayne Bozievich and discussed the purchase of the latter's business—G. W. Bozievich Plumbing & Heating, Inc. ("GWBP&H")—a Maryland corporation, by LP&H. Bozievich served as president and treasurer of GWBP&H and is the owner of a master plumber's license with the Washington Suburban Sanitary Commission ("WSSC").

LP&H is a Virginia corporation which incorporated on March 7, 1979. The master plumber for LP&H in Virginia was Jim Cloud who served in that capacity until October of 1979. LP&H did not have a master plumber in Maryland until after the acquisition of GWBP&H.

The Court now turns to the allegations raised in the Complaint.

The allegations raised in Count 1 of the Complaint principally involve the manner of notification and circumstances surrounding a meeting held at the home of George McKenzie on or about July 24, 1979. This meeting was held for the purpose of entering into an agreement of sale between LP&H and Bozievich of the latter's plumbing business in Maryland. The plaintiffs, as minority stockholders and directors in

LP&H, allege further that the defendants made little effort to advise them of the status of LP&H's business affairs and that this lack of cooperation was a factor in their failure to prevent the corporation's collapse in late 1979 and early 1980.

A review of the record reveals that LP&H began as a small business located in George McKenzie's home. LP&H was not well capitalized from its inception and had almost constant case-flow problems. Aggravating these problems was the purchase of GWBP&H by LP&H and the latter's subsequent over extension caused thereby.

Testimony had at trial indicates that George McKenzie first approached Bozievich in May of 1979 regarding the purchase of GWBP&H. In a letter to Bozievich from George McKenzie, dated June 28, 1979, McKenzie outlined an initial understanding between the parties regarding the aforesaid agreement. The parties affixed their signatures to this letter on July 6, 1979.

Bozievich and LP&H later entered into a final Agreement of Sale, dated July 10, 1979, which provided for closing on July 25, 1979. As stated above, closing was actually held on July 24, 1979. Maginniss argues that not only did he receive only two hours notice of this meeting but that he was unaware that the principal item of business was to complete the sale. Maginniss' wife and Ray and his wife did not attend this meeting. It was, therefore, necessary to have these parties affix their signatures on certain promissory notes as guarantors to satisfy the requirements of the Agreement of Sale.

The Agreement of Sale contemplated the purchase by LP&H of equipment, machinery, vehicles (subject to financing liens on two vehicles assumed by LP&H) and other items stated in an exhibit appended to the agreement. LP&H also purchased "the exclusive right and license [of GWBP&H] for five years from the date of this agreement, to conduct plumbing services within the State of Maryland...."

Maginniss asserted at trial that he never saw a copy of the Agreement of Sale or the exhibit appended thereto. He acknowledged that the Promissory Note ("Confessed Judgment with Guaranties"), dated July 10, 1979, was shown to him at the meeting but that he was unaware beforehand that he would be asked to sign the note at that time. The terms of the note required that LP&H pay to the order of GWBP&H the principal sum of $50,000.00 at nine percent (9%) interest over a period of five (5) years. George McKenzie and/or Kathleen McKenzie guaranteed this note up to $16,000.00 with their residence as collateral. William McKenzie and/or Theresa McKenzie guaranteed this note up to $11,500.00 with their residence as collateral. Richard Ray and Linwood Maginniss and their wives guaranteed this note up to $48,000.00 and $50,000.00, respectively, with their residences as collateral. The McKenzies and Maginnisses also signed Promissory Note Addenda.

Maginniss testified that he was given the impression at the meeting that LP&H would be able to use Bozievich's WSSC Master Plumber's License (a WSSC permit is required before a plumber may break the seals on a trap in plumbing). George McKenzie acknowledged that he too thought the Agreement of Sale provided for LP&H's continued use of Bozievich's Master Plumber's License. Bozievich indicated to him that he was going to register with the WSSC as Gary Bozievich, d/b/a Loudoun Plumbing & Heating, Inc. Bozievich did not so re-register. Bozievich testified that he was willing to permit LP&H to use his license for a short period of time—perhaps one or two months. Having reviewed the record on this point, the Court finds that the provisions in the Agreement of Sale concerning the use of the applicable licenses were not understood by George McKenzie, and it is apparent that if there was any misleading it was by Bozievich, not McKenzie.[1]

---

1. On the day of trial, the plaintiffs, Gary W. Bozievich and GWBP&H, presented a stipulation of settlement in the present case which called for the dismissal of Counts 3, 4 and 5 of the Complaint against Bozievich and GWBP&H

Further, the weight of the evidence reveals that George McKenzie made an honest effort to obtain a plumber possessing a master plumber's license and, apparently, believed he had located someone for this purpose.

The Court notes there is some question about Maginniss' lack of knowledge as to the existence of liens on vehicles purchased as part of the Agreement of Sale. Although the bill of sale made no mention of such liens, the exhibit appended to this agreement stated that LP&H assumed the aforesaid liens. George McKenzie testified that he told Maginniss of the existence of the vehicle liens.

Maginniss also testified that he did not see the Agreement of Sale at the meeting. However, his own witness, Bozievich, stated categorically that everyone at that meeting was given a copy of the agreement. This corroborated the testimony given by George and William McKenzie. The Court is of the opinion that Maginniss had a reasonable opportunity to review the agreement and the ancillary documents involved therewith. The defendants did not sign the agreement until Maginniss arrived and Bozievich was present throughout to answer any questions put to him. The evidence is clear that although the agreement was drawn up by Bozievich's attorney, the attorney for LP&H reviewed the document. LP&H's attorney concluded that although it was weighted in Bozievich's favor, it was nonetheless satisfactory.

The record reveals that Bozievich was reluctant at this meeting to make further changes in the agreement. It is also apparent that he was anxious to close the deal inasmuch as he was in the process of relocating to Arizona, if in fact he had not already done so.

In view of the testimony given at trial, it is clear that George McKenzie had little or no background in the formation of contracts and business affairs. Nor was his father, William McKenzie, a letter carrier for twenty-five years with the United States Postal Service, well versed in business affairs of this nature. Furthermore, it cannot be said that either George McKenzie's wife or mother had any greater expertise in evaluating the propriety of entering into the sales contract at issue. In fact, the only parties with such business expertise were the plaintiffs Maginniss and Ray. Maginniss, as the president of his own real estate company, must be deemed to have a substantial background in the area of sales contracts.

Notwithstanding the importance of this meeting, Maginniss testified that he remained for only a short time. Since Maginniss' wife did not accompany him to the meeting, and was a necessary party for the purpose of signing the appropriate promissory note, Maginniss had until the following day to consider the matter before his wife signed the note. Maginniss acknowledged that he relied upon advice given by Richard Clayton, a certified public accountant for LP&H, who told him that it was in LP&H's interest to consummate the Bozievich deal. In light of these facts, the Court is not persuaded by Maginniss' testimony that he did not believe his signature on the subject note to be final and binding.

The plaintiff, Richard Ray, testified that he did not attend the meeting at George McKenzie's home. It was his understanding that the meeting's sole purpose was to review the sales documents. Ray was the last person to sign the note and candidly acknowledged that he relied fully upon those who had signed before him. Ray, as an associate in Maginniss' firm and an employee with a responsible position in the federal government, like Maginniss, as

---

as party defendants, thereby removing them from the suit.

GWBP&H confessed a judgment in state court on August 26, 1981 against the plaintiffs and defendants in the instant matter on the promissory note executed by the aforesaid parties in the amount of $50,000.00 and personally guar-

anteed by them. As part of the stipulation of settlement, GWBP&H and Bozievich agreed to assign the judgments obtained against the remaining defendants by GWBP&H to the plaintiffs. The Court thereafter granted the request to dismiss GWBP&H and Bozievich as party defendants from the instant matter.

indicated above, must be deemed to have a background in business affairs.

The law relating to fraud in Virginia has been said to include "all acts, omissions, and concealments which involve a breach of legal duty, trust, or confidence justly reposed, and are injurious to another, or by which an undue or unconscientious advantage is taken of another." 8B Michie's Juris., *Fraud and Deceit*, § 2 (1977 Repl.). Relief may only be granted where the plaintiff establishes fraud "by evidence that is clear, cogent and convincing." *Id.* at § 55. Further, the law does not presume the existence of fraud and relief will be denied if all that the plaintiff can establish is "that the defendant has not been perfectly fair in his dealings." *Id.*

In order to maintain an action for fraud the party alleging it must establish:

"(1) [T]hat the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that the plaintiff relied upon it innocently and was justified under the circumstances in relying upon it; (3) that he was damaged because he relied upon it; and (4) that the defendant knew his statement was false."

*Id.* at § 2.

There is no evidence in the record that the plaintiffs were fraudulently induced by the defendants to sign the promissory notes at issue herein. Nor is the evidence sufficient to establish that any losses or damages sustained by the plaintiffs were the result of acts committed by the defendants at the July 24, 1979 meting. Indeed, the weight of the evidence suggests that any statements by the defendants to the plaintiffs at this meeting were made in good faith and certainly cannot be characterized as knowingly false.

The Court, in arriving at this conclusion, is persuaded by the fact that George McKenzie and his wife, as well as William McKenzie and his wife, gave open notes to the plaintiffs on January 11, 1980 in the amounts of $11,500.00 and $6,500.00, respectively. These notes were secured by deeds of trust on their residences. This action certainly belies the plaintiff's argument that the defendants had any intention to deceive them. To the contrary, it is clearly indicative of the defendants' honest desire to see that the business continue. The defendants even authorized the plaintiffs to discount the notes in order to provide the business with necessary working capital and to pay off outstanding loans.[2]

Based upon the foregoing, the Court dismisses Count 1 of the Complaint against the defendants.

The Court, at the conclusion of the plaintiff's case, granted motions for summary judgment to Kathleen and Theresa McKenzie as to Count 1 and for the reasons set forth in the record hereby reaffirms its decision to so hold. Summary judgment was also granted to these parties with respect to Count 7 and Count 8, which effectively dismissed them as party defendants in the case at bar.

First, with respect to Kathleen McKenzie, the Court determined that the plaintiffs failed to make out a prima facie case that she wrongfully received cash from LP&H bank accounts as alleged in Count 7. With respect to Count 8, the Court found that this defendant was but an employee of the debtor corporation rather than an officer or director and, therefore, she had no responsibility to oversee the accounting procedures of LP&H.

Next, with respect to Theresa McKenzie, Count 8 was dismissed as to her inasmuch as she was neither an officer nor a director of LP&H, but only the debtor

---

2. Maginniss testified that these notes were never discounted inasmuch as a bank loan which had come due was paid off without the need to discount the notes. Maginniss, however, did not release the notes when requested to do so by the McKenzies, who at that time were attempting to sell their homes in order to provide additional capital for the business. Maginniss later released the notes secured by the deeds of trust at settlement on the defendants' homes.

corporation's bookkeeper [3] and, as such, she was not under an affirmative duty to apprise the plaintiffs of actions being undertaken by LP&H.

The Court placed the motions for summary judgment made by George and William McKenzie under advisement and directed that they proceed with their case.

■ The Court must determine whether George McKenzie negligently and/or fraudulently dissipated the assets of LP&H, in part by his failure to deal with corporate assets as corporate property and not his own.

All parties acknowledge that by January of 1980 LP&H's line of credit was virtually exhausted and its employees were, by then, demanding that their weekly salaries be paid in cash as a result of the company's paychecks frequently having been returned for nonsufficient funds. In order to meet the weekly payroll, LP&H would seek to convert accounts receivable due and owing as quickly as possible into cash.

Testimony given at trial indicates that George McKenzie did use corporate funds from a petty cash fund to purchase drinks and food from time-to-time. McKenzie admitted that he made use of such funds but further testified that these funds were paid back in full by him. This testimony given by the one-time vice-president of LP&H, Wilber Nolan, who stated that George McKenzie once had a check in his possession made out to him personally in the amount of $4,500.00 for a job completed by LP&H. George McKenzie, appearing as a rebuttal witness, acknowledged that he received this check from a contractor in April of 1979. However, he testified that of the $4,500.00 received by him he turned over $3,900.00 to Theresa McKenzie for prompt deposit in the corporation's bank account and used the remaining $600.00 to purchase material for on-site work by LP&H. This testimony is also uncontroverted.

The Court is persuaded by McKenzie's explanation for the use of the funds heretofore addressed and, having reviewed the record as a whole, finds that the plaintiffs have failed to establish any misappropriation of corporate funds on his part. To the extent that Count 2 alleges that George McKenzie negligently and/or fraudulently dissipated corporate assets and used the same for his personal use this count must be dismissed.

The final issue to be addressed is whether William McKenzie's and George McKenzie's allegedly negligent and/or fraudulent actions (as asserted in Counts 2 and 6 of the Complaint) were due in part to their alleged failure to maintain adequate books and records. As to William McKenzie, the plaintiffs further allege that he failed to apprise them of alleged irregularities in the operation of LP&H.

■ It is also uncontroverted that William McKenzie, as secretary-treasurer of LP&H, did not maintain a corporate minute book. The Court is of the opinion that the probative value of this evidence does not constitute a negligent and/or fraudulent act on his part, particularly since there was testimony that Richard Clayton (as the certified public accountant for LP&H) was to maintain the corporate minute book.

The plaintiffs argue that on numerous occasions they requested to see financial statements and related information concerning the status of LP&H. While the testimony on this point is conflicting, the weight of the evidence suggests that financial statements were made available to the plaintiffs at all board of directors' meetings and that these defendants honored the plaintiffs' request in December 1979 to review the bookkeeping records. George McKenzie testified that he gave the plaintiffs full and complete access to these records.

---

3. The Court notes that the plaintiffs were aware of the fact that Theresa McKenzie was employed as LP&H's bookkeeper on a part-time basis only and that she did not possess an accounting background. The Court believes that she discharged her duties as best she could and adopted the procedures recommended to her by Richard Clayton, LP&H's certified public accountant.

Although the manner in which the defendants maintained the books and records of LP&H was less than exemplary, it certainly cannot be said that any putative inadequacy rose to the level of either negligence or fraud on the defendants' parts.

The plaintiffs were well aware that William McKenzie was a letter carrier with no experience in performing the duties of secretary-treasurer. There is no evidence in the record that the plaintiffs seriously contemplated requesting his removal from either office and, in addition, they must be held to have had knowledge of his lack of experience. Further, the Court is unable to find that any deficiency in the maintenance of the corporate books and records was a factor in William McKenzie's alleged failure to apprise the plaintiffs of irregularities in the operation of LP&H. Nor, in fact, has there been evidence presented to the Court's satisfaction that he had any knowledge of corporate irregularities which would support a claim of negligence or fraud on the defendants' part. Similarly, the plaintiffs have failed to establish that any alleged inadequacy of the corporate books and records constitutes a claim sufficient to hold George McKenzie accountable for the allegations of negligence and/or fraud as alleged against him in Count 2 of the Complaint.

Therefore, based upon a review of the entire record in the case at bar, the Court must conclude that Count 2 be dismissed as against George McKenzie and that Count 6 be dismissed as against William McKenzie.

The Court is of the opinion that the plaintiffs have failed to establish any of the allegations raised in the Complaint, and accordingly, judgment on all counts asserted will be for the defendants.

An appropriate Order will enter.