In the Matter of McLOUTH STEEL
CORPORATION, Debtor.

Bankruptcy No. 81–07001–W.

United States Bankruptcy Court,
E. D. Michigan, S. D.

Sept. 20, 1982.

Timothy H. Howlett, Detroit, Mich., for McLouth.

Allen J. Kovinsky, Southfield, Mich., for Committee of Retirees.

## MEMORANDUM OPINION AND ORDER

GEORGE E. WOODS, Bankruptcy Judge.

This matter comes before the Court on the petition of the McLouth Steel Salaried Employees Committee of Retirees (Committee) for the payment of medical and life insurance benefits.

McLouth Steel Corporation (McLouth) filed for relief under Chapter 11 on December 8, 1981. On March 29, 1982, McLouth, as debtor in possession, entered into an operating agreement with its secured lenders.

As a condition to extending the operating agreement, the secured lenders required McLouth to retain essential management personnel. On May 14, 1982, a Court order was entered authorizing McLouth to offer employment contracts to essential employees. The contracts provide for the payment of lump sum incentive benefits to the employees upon completion of their employment with McLouth. The total of the lump sum incentive payments will aggregate $700,000.00.

McLouth sought to provide payments in a comparable aggregate amount to its union employees. On May 14, 1982, a Court order was entered authorizing McLouth to pay costs of $700,000.00 associated with the granting of a one week vacation to each of its eligible union employees and the purchasing of medical and life insurance cover-

age for its union retirees. The allocation of the funds was determined by agreement with the union.

On July 26, 1982, the Committee brought a petition for the payment of medical and life insurance benefits to salaried retirees.[1] The Committee raises three arguments in support of its petition. The first is based on an alleged violation of equal protection; the second on a claim of breach of contract and fraudulent inducement; the third on the necessity of preliminary relief.

## A. Equal Protection

The Committee argues that the Bankruptcy Court and the secured creditors' committee, acting under the authority of the Bankruptcy Court, have violated the Fifth Amendment by allowing benefits to union retirees while denying benefits to salaried retirees.

The Fifth Amendment prohibits discrimination that violates due process. *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). Nevertheless, the due process clause of the Fifth Amendment encompasses a federal action requirement. *Public Utilities v. Pollack,* 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed.2d 1068 (1952). The standards utilized to determine federal action are identical to those employed to establish state action under the Fourteenth Amendment. *Johnson, supra.*

The general rule with regard to the nexus between courts and the state action requirement is that "[t]he mere availability of a forum for the resolution of private conflicts does not clothe private litigants with the authority of the state." *Henry v. First National Bank of Clarksdale,* 595 F.2d 291, 296, *rehearing denied,* 601 F.2d 586 (5th Cir. 1979). *See also, Louisville Area Interfaith Committee v. Nottingham Liquors,* 542 F.2d 652 (6th Cir. 1976); *United Mine Workers of America, Inc. v. Wellmore Coal*

*Corporation,* 609 F.2d 1083 (4th Cir. 1979); *Harley v. Oliver,* 539 F.2d 1143 (8th Cir. 1976); *Grow v. Fisher,* 523 F.2d 875 (7th Cir. 1975); *Glaspoole v. Albertson,* 491 F.2d 1090 (8th Cir. 1974); *Stevens v. Frick,* 372 F.2d 378 (2d Cir. 1967), *cert. denied,* 387 U.S. 920, 87 S.Ct. 2034, 18 L.Ed.2d 973 (1967); *Fallis v. Dunbar,* 386 F.Supp. 1117 (N.D.Ohio 1974), *aff'd.,* 532 F.2d 1061 (6th Cir. 1976). The Fifth Circuit has carved out an exception to the general rule, distinguishing the situation where a private party has procured a judgment and is able to enlist the power of the state on his behalf in enforcing that judgment. *Henry, supra.*[2] *See also, Bergstrom v. Bergstrom,* 478 F.Supp. 434 (D.C.N.D.1979) *vacated on other grounds,* 623 F.2d 517 (8th Cir. 1980).

The Sixth Circuit has not addressed the *Henry* exception; it has, however, applied the general rule.

In *Louisville Area Interfaith Committee, supra,* plaintiff sought relief on a claim of deprivation of constitutional rights arising out of a state court order restraining it from the mass picketing of defendant's business premises. The District Court granted defendant's motion to dismiss. The Sixth Circuit affirmed, ruling that the initiation of state court proceedings did not constitute state action.

In *Fallis, supra,* townhouse tenants brought an action to enjoin owners of a housing complex from prosecuting an eviction action. Plaintiffs argued that the Supreme Court opinion of *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), compelled the conclusion that the application of state law in suits between private persons constituted state action. The District Court concluded that the rule of *Shelley* did not extend to the degree urged by plaintiffs. The Court reasoned:

> The Court is compelled to reject plaintiffs' argument concerning the extent of the *Shelley v. Kraemer* rationale. First,

---

1. The Committee consists of a group of 10 salaried retirees. It alleges that it is representative of approximately 312 salaried retirees.

2. The judgment at issue in *Henry* became executory immediately upon entry, under Mississippi procedure.

*Shelley v. Kraemer* required the state court to find that the prospective buyer was black and that the restrictive covenant being enforced was racially restrictive. The parties necessarily made the state court privy to the discriminatory purpose. No such compelling facts exist in the present case, as the Ohio eviction procedure merely affords the landlord a method of vindicating his property rights without inquiring into his motive for bringing the suit. A second reason for limiting the *Shelley v. Kraemer* rule is the danger which the use of that doctrine poses as a precedent. A logical extension of the doctrine would result in a federal cause of action existing whenever any state police power is used by private persons where constitutionally protected rights are involved. It could logically apply where a proprietor seeks to remove with police assistance a person from his private property because of what the person is saying. Such an extension has so great an application to purely private actions as to be overbroad. The Court therefore finds that filing an eviction action in state court is not action by the defendant under color of state law within § 1983 and plaintiffs have thus failed to state a claim upon which relief can be granted under § 1983.

386 F.Supp. at 1120–1121 (footnote omitted). The Sixth Circuit affirmed, holding that filing an eviction proceeding was not equivalent to state action. 532 F.2d at 1061.[3]

■ The Committee relies solely on *Shelley* to support its contention that orders of the Court constitute governmental action. The Court, however, finds the two-part

analysis of the Northern District of Ohio in *Fallis* persuasive. The instant case is distinguishable from *Shelley* in that the Court has not been made privy to any discriminatory purpose on the part of McLouth. Additionally, the Court is cognizant of the dangers inherent in extending the *Shelley v. Kraemer* rule to the degree proposed by the Committee.

Even assuming *arguendo* that governmental action is present, the Committee has failed to present evidence of an equal protection violation. Equal protection analysis involves the application of a two-tiered standard.

■■ The strict scrutiny standard is utilized in cases where governmental action impairs a fundamental constitutional right or involves a suspect class. In such instances, the Court subjects the challenged action or legislation to strict judicial scrutiny. *In Re Bradford,* 14 B.R. 722 (Bkrtcy.N.D.Ill. 1981). Fundamental rights include marriage, procreation, voting, the First Amendment rights of free speech, press and assembly, and interstate travel. *In Re Purdy,* 16 B.R. 860 (Bkrtcy.N.D.Ga.1981).[4]

■ In all other cases, the rational justification standard is utilized. Under the rational justification test, the action challenged need only be rationally based or free from invidious discrimination. *Bradford, supra.*[5] The rational justification test applies to government action and legislation affecting economics and social welfare. *See In Re Leyba,* 12 B.R. 773 (Bkrtcy.D. Colo.1981). In *United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), the Supreme Court observed:

---

**3.** *Louisville Area Interfaith Committee* and *Fallis* both involved 42 U.S.C. § 1983, rather than the Fourteenth Amendment. However, the "under color of state law" requirement of § 1983 has been construed to be equivalent to the state action requirement of the Fourteenth Amendment. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1971).

**4.** The strict scrutiny test has been applied in *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); *Kramer v. Union Free School District,* 395 U.S. 621, 89 S.Ct.

1886, 23 L.Ed.2d 583 (1969); *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).

**5.** The rational justification test has been applied in: *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1969); *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); *Ortwein v. Schwab,* 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973), *reh. den.,* 411 U.S. 922, 93 S.Ct. 1551, 36 L.Ed.2d 315 (1973).

Bankruptcy legislation is in the area of economics and social welfare. This being so, the applicable standard, in measuring the propriety of Congress' classification, is that of rational relationship.

The Committee asserts that the present action involves their decision not to join a union and, consequently, their First Amendment right of association. Alternatively, the Committee contends that McLouth has failed to demonstrate a reasonable basis for the actions of the secured creditors' committee and the Bankruptcy Court. The Court disagrees.

 The First Amendment protects the freedom "not to be required to associate" with the same degree of force with which it protects the freedom of association itself. *Kolinske v. International Union, UAW,* 530 F.Supp. 728 (D.C.1982). However, the present action involves orders of the Bankruptcy Court authorizing a debtor in possession to provide salaried employees with lump sum incentive benefits, union employees with a one week vacation, and union retirees with medical and life insurance benefits. As such, the action is in the area of economic and social welfare. Therefore, the applicable standard is that of rational justification.

 A rational justification may result in some inequality. *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), *rehearing denied,* 398 U.S. 914, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970). McLouth allocated $700,000.00 to its salaried employees and $700,000.00 to its union employees and retirees. The action was rationally based on the compelling need of McLouth to retain adequate personnel to continue its business.

The Committee has not been denied equal protection by the actions of the Court or the secured creditors' committee.

**B. Breach of Contract and Fraudulent Inducement**

The Committee argues that McLouth entered into express or implied contracts with the salaried retirees, guaranteeing them medical and life insurance benefits. Alternatively, the Committee contends that McLouth fraudulently induced the salaried employees to retire, by promising them benefits.

 The theories of express and implied contract include the same essential elements of offer, acceptance and consideration. In an express contract intent is reduced to writing. *In Re Washington Medical Center, Inc.,* 10 B.R. 616 (Bkrtcy.D.C. 1981). Conversely, an implied in fact contract presupposes a mutual agreement and an intent to promise, which have not been expressed in words. Absent an intent to contract, the Court cannot find a contract. *In Re Virginia Block Company,* 16 B.R. 771 (Bkrtcy.W.D.Va.1982).

 The elements of fraud include: (1) a false misrepresentation pertaining to a past or present fact, (2) knowledge that the representation is false or the reckless assertion of a matter of fact without knowledge of its truth, (3) an intention to induce the other person to act upon the misrepresentation, (4) reliance upon the misrepresentation, and (5) resultant damage. *In Re Pommerer,* 10 B.R. 935 (Bkrtcy.D.Minn.1981); *U. S. v. Cripps,* 460 F.Supp. 969 (E.D.Mich. 1978) (applying Michigan law). At least one Bankruptcy Court has refused to find fraudulent inducement where the weight of the evidence suggested that the representations at issue were made in good faith. *In Re Loudoun Plumbing and Heating, Inc.,* 13 B.R. 232 (Bkrtcy.E.D.Va.1981).

 The Committee relies solely on the following documents to support its claim: (1) the May 23, 1975 Preliminary Pension Counseling form of Herman E. Horstman, (2) the May 31, 1975 request for Special Early Retirement form of Herman E. Horstman, (3) the March 5, 1982 Preliminary Pension Counseling statement of Marvin J. Husted, and (4) unidentified and undated literature relating to general retirement benefits. However, the above documents do not indicate an intent on the part of McLouth to contract. Nor do they establish any of the elements of fraudulent in-

ducement, particularly that the representations were known to be false at the time they were made.

The Committee has failed to substantiate either its breach of contract or its fraudulent inducement claim.

C. Preliminary Relief

█ The Committee argues that it is entitled to preliminary relief in the form of the payment of life insurance, medical insurance and master medical premiums based on the criteria set forth in *Mason County Medical Association v. Knebel,* 563 F.2d 256 (6th Cir. 1977). *Knebel* set out four standards which must be considered by the Court before preliminary relief may be granted: (1) whether the plaintiffs have shown a substantial likelihood of success on the merits, (2) whether the plaintiffs have shown irreparable injury, (3) whether the issuance of preliminary relief would cause substantial harm to others, and (4) whether the public interest would be served by preliminary relief.

In the view of the Court, any future likelihood of success by the Committee on the merits of the case is remote, at best. Second, any expenses incurred by the individual committee members in continuing medical and life insurance premiums may be compensated by damages. Third, the issuance of preliminary relief would cause substantial harm to McLouth's creditors and to the continued operation of the debtor. Fourth, the public interest is best served by the continued operation of McLouth.

The Committee does not dispute the precarious financial situation of McLouth, nor its need for the protection of Chapter 11. Further, the Committee does not suggest that extending the operating agreement was other than in the best interests of McLouth or that McLouth could stay in operation without the services of its essential employees. Finally, the Committee does not dispute that the payment of benefits to salaried employees, as well as union employees and retirees, will increase the probability of retaining essential employees.

Rather, the Committee simply argues that salaried retirees should be provided the identical benefits of the union retirees.

The Court is sympathetic to the plight of the salaried retirees and agrees that full benefits for retirees and employees would be the ideal situation. The reality remains, however, that McLouth, a debtor in possession, is in a survival over salvage crisis. The $1,400,000.00 allotted to benefits for salaried employees and union employees and union retirees will, as a matter of considered judgment, likely act as a life-support system for McLouth by insuring that qualified union and salaried workers remain on the job. Conversely, the granting of benefits to salaried retirees will do nothing to further that goal.

THEREFORE, the petition of the Committee for the payment of medical and life insurance benefits to salaried retirees is DENIED.

So ordered.